



FILED
Mar 18 2019, 2:54 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 18S-CR-436

## Christapher Batchelor
*Appellant (Defendant)*

–v–

## State of Indiana
*Appellee (Plaintiff)*

Argued: October 4, 2018 | Decided: March 18, 2019

Appeal from the Clay Circuit Court
No. 11C01-1512-F6-890
The Honorable Joseph D. Trout, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 11A01-1707-CR-1574

**Opinion by Justice Massa**

Chief Justice Rush, Justice David, Justice Slaughter, and Justice Goff concur.

**Massa, Justice.**

The purpose of a jury instruction "is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Campbell v. State*, 19 N.E.3d 271, 277 (Ind. 2014). Because the challenged instruction here fell short of this objective, we disapprove of its use going forward. But because we find that the jury charge, as a whole, cured the instructional defect, and because the evidence clearly sustained the defendant's conviction, we affirm the trial court.

# Facts and Procedural History

On a rainy, mid-December evening, Clay County Deputy Sheriff James Switzer noticed Christapher Batchelor driving without a seatbelt. As the deputy approached him from behind at a four-way stop, Batchelor reached over to fasten his seatbelt before signaling and turning left. The deputy, driving in a marked police cruiser, then activated his emergency lights. But Batchelor failed to immediately stop. For the next minute and thirty-eight seconds, Batchelor passed a gas station and wound his way through a well-lit residential area at about thirty-five miles per hour, making complete stops at two intersections and passing several illuminated side streets along the way. Even as other vehicles came to a stop during this low-speed pursuit, and despite the piercing ring of the deputy's siren, Batchelor simply kept driving. When the deputy directed his LED spotlight onto the truck's side and rearview mirrors, Batchelor finally pulled over into a gravel parking spot on the side of the road.

As Batchelor exited his truck, the deputy ordered him to the ground. Batchelor initially complied. But as the deputy approached to arrest him, he resisted, and a struggle ensued. It took two more backup officers to finally subdue Batchelor. In the end, the deputy injured his ankle, one of the back-up officers jammed his finger, and another received a black eye.

The State charged Batchelor with three crimes: Level-6 felony resisting law enforcement by fleeing, Level-6 felony battery on a police officer, and Class-A misdemeanor resisting arrest. *See* Indiana Code §§ 35-44.1-3-

1(a)(3), (b)(1)(A) (2014) (felony resisting); I.C. §§ 35-42-2-1(b)(1), (d)(2) (2014) (felony battery); I.C. § 35-44.1-3-1(a)(1) (2014) (misdemeanor resisting).

At the conclusion of evidence at trial, the State proposed several jury instructions, including one which defined the act of fleeing, as that term applied to the felony-resisting charge. Under that instruction—Instruction 22—a person "flees" when he or she "attempts to escape from law enforcement or attempts to unnecessarily prolong the time before the person must stop." App. Vol. III, p.71. Instruction 22 also required the State to prove beyond a reasonable doubt that the "defendant acted with the intent to escape" or, in the alternative, that a "reasonable driver in the Defendant's position" would have stopped sooner. *Id.*

After summarizing all proposed final jury instructions, the trial court asked the parties, "We good?" Tr. Vol. III, p.98. Defense counsel responded "Yeah" while the prosecution replied with "No objection." *Id.*

In his closing arguments, Batchelor claimed that he had not attempted to flee, as there was no high-speed chase, it was dark, it was raining, and the gravel parking spot where he stopped was "a good and safe place to pull over." Tr. Vol. III, pp. 108–09. He also argued self-defense, claiming the deputy had used unlawful force in subduing him. But the State argued that Batchelor was fleeing, citing the numerous places he could have stopped, the well-lit streets, and the lack of evidence supporting a reasonable safety concern.

Following deliberations, the jury found Batchelor guilty on all counts and the trial court entered judgment of conviction. Batchelor appealed, arguing that Instruction 22 expanded the definition of fleeing, which invaded the province of the jury and diminished the State's burden of proof.

In a unanimous opinion, our Court of Appeals reversed the felony-resisting conviction while affirming all other convictions. *Batchelor v. State*, 97 N.E.3d 297, 305 (Ind. Ct. App. 2018), *vacated*. The panel concluded that the jury instruction, by allowing a conviction based on what a "reasonable driver" would have done, permitted the State to convict Batchelor on a

civil negligence standard, resulting in fundamental error. *Id.* at 303. Both parties unsuccessfully sought rehearing.

We granted the State's petition to transfer and now address Batchelor's claim of instructional error as it relates to his felony-resisting conviction. Because he fails to explain how this error affected his felony-battery and misdemeanor-resisting convictions, we summarily affirm those convictions.

## Standard of Review

We generally review a trial court's jury instruction for an abuse of discretion. *Kane v. State*, 976 N.E.2d 1228, 1231 (Ind. 2012). Under this standard, we look to whether evidence presented at trial supports the instruction and to whether its substance is covered by other instructions. *Id.* at 1230–31. When the appellant challenges the instruction as an incorrect statement of law, we apply a de novo standard of review. *Id.* at 1231. We reverse the trial court only if the instruction resulted in prejudice to the defendant's "substantial rights." *Hernandez v. State*, 45 N.E.3d 373, 376 (Ind. 2015).

## Discussion and Decision

A person commits the crime of resisting law enforcement, a Level 6 felony, when that person, using a vehicle, "knowingly or intentionally . . . flees from a law enforcement officer" after that officer has, "by visible or audible means, including operation of [a] siren or emergency lights, identified himself or herself and ordered the person to stop." I.C. § 35-44.1-3-1.

Although the felony-resisting statute offers no definition of the term "flees," our Court of Appeals offered some guidance in *Cowans v. State*, 53 N.E.3d 540 (Ind. Ct. App. 2016), *trans. not sought*. There, the court affirmed the defendant's resisting-by-fleeing conviction, rejecting as a mistake of law his belief that he could delay stopping for police due to safety concerns. *Id.* at 543. *See Yoder v. State*, 208 Ind. 50, 58, 194 N.E. 645, 648

(1935) (reciting the longstanding principle that "ignorance of the law excuses no man") (internal quotation marks omitted). In speculating that the defendant was "far from alone" in his mistaken belief, the *Cowans* panel decided to "address some of the underlying issues" of that case, issues "likely to reoccur for other citizens of Indiana." 53 N.E.3d at 543. While finding "no express sanction" in the resisting statute for delaying a stop due to safety concerns, the panel concluded that a driver with an "adequate justification" may still "have some discretion to choose the location of a stop." *Id.* at 544 (citing *Woodward v. State*, 770 N.E.2d 897, 902 (Ind. Ct. App. 2002) (acknowledging that a driver may have an "adequate justification" for "choos[ing] the location of the stop" but affirming the defendant's resisting-by-fleeing conviction based on sufficient evidence), *trans. denied*).

Based on this conclusion, the *Cowans* panel determined that a defendant charged with resisting would be entitled to a jury instruction defining the word "flee." *Id.* at 545–46. This definition, the panel opined, should explain "that if a reasonable driver in the defendant's position would have felt unsafe to come to an immediate halt, and if the defendant took reasonable steps to increase the safety of the stop without unnecessarily prolonging the process, then the defendant was not fleeing." *Id.* at 546.

Instruction 22 tracks this language from *Cowans*:

> A person who fails to stop his vehicle promptly "flees" law enforcement when the person attempts to escape from law enforcement or **attempts to unnecessarily prolong the time before the person must stop**. It is an issue in this case whether the Defendant attempted to escape or **unnecessarily prolonged** the time before stopping. The burden is on the State to prove beyond a reasonable doubt that:
>
> (1) The defendant acted with the intent to escape, <u>or</u>

> (2) A **reasonable driver** in the Defendant's
> position **would not have felt unsafe** under
> the facts of this case **to come to an
> immediate halt**, <u>or</u>
>
> (3) [I]f a **reasonable driver** in the Defendant's
> position **would have felt unsafe to come
> to an immediate halt**, the driver **would
> have come to a halt sooner**.

App. Vol. III, p.71. (bold emphases added.)

Batchelor argues that, by using a civil negligence standard to establish criminal culpability, Instruction 22 relieves the State of its burden to prove, under the felony-resisting statute, that he knowingly or intentionally fled. Permitting the jury to convict on a lesser *mens rea*, he insists, violates due process and conflicts with "well-established precedent" holding that similar instructional defects amount to fundamental error. Resp. to Pet. to Trans. at 6. Batchelor also contends that, by expanding the statutory definition of fleeing, Instruction 22 invades the province of the jury in violation of article 1, section 19 of the Indiana Constitution. He specifically faults the instruction for inviting the jury to focus on whether "reasonable" safety concerns justified his actions, thus minimizing other relevant factors, like the speed at which he drove or the complete stops he made at intersections.

The State counters that Batchelor invited the alleged instructional error, thus precluding appellate review. On the merits, the State argues that the trial court committed no fundamental error because the instruction embodies an accurate statement of law approved by Court of Appeals precedent. What's more, the State insists, the trial court's general instructions properly informed the jury on all elements of the offense, thus curing any defect in the challenged instruction.

# I. With no evidence of strategic maneuvering at trial, Batchelor did not invite the alleged instructional error.

We first address the State's argument that Batchelor invited the trial court's alleged instructional error. Initially, we observe that the State potentially waived this argument, having raised it for the first time in its petition for rehearing in the Court of Appeals.[1] *See Young v. State*, 30 N.E.3d 719, 728 (Ind. 2015) ("Generally, new claims or issues . . . cannot be presented for the first time in a petition for rehearing.") (internal quotation marks omitted). Still, we address this issue—briefed and argued extensively by both parties on transfer—to clarify important distinctions between our doctrines on waiver and invited error.[2]

A party's failure to object to, and thus preserve, an alleged trial error results in waiver of that claim on appeal. *Durden v. State*, 99 N.E.3d 645, 651 (Ind. 2018). But "[w]hen the failure to object accompanies the party's affirmative requests of the court, it becomes a question of invited error." *Id.* (internal quotation marks omitted). The distinction in these two doctrines is an important one: whereas waiver generally leaves open an appellant's claim to fundamental-error review, invited error typically forecloses appellate review altogether. *Brewington v. State*, 7 N.E.3d 946, 974–75 (Ind. 2014).

---

[1] *Compare* State's Br. of Appellee at 10 ("Batchelor failed to object to the jury instruction he now challenges, and he has waived his claim as a result. Therefore, any alleged error can only be reviewed for fundamental error.") (internal citation omitted) *with* State's Pet. for R'hrg at 5 (arguing that, when, as here, "a defendant does not object at trial, it cannot be fundamental error if there is a legitimate strategic reason for not objecting") (citing *Brewington v. State*, 7 N.E.3d 946, 972 (Ind. 2014)).

[2] We classify alleged errors as structural, fundamental, or harmless. For a discussion of these error doctrines and the scope of appellate review they embrace, see *Durden v. State*, 99 N.E.3d 645, 651–53 (Ind. 2018).

Here, both parties recognize that Batchelor never objected to the instruction he now challenges.[3] But the State seeks to characterize this procedural default as an affirmative action fatal to Batchelor's claim of fundamental error. By insisting that Batchelor "explicitly had no objection to the instruction when proposed" and that he "affirmatively accepted the jury instructions as a whole," State's Reply Br. on Trans. at 4, the State seeks to blur—if not collapse—the distinction between waiver and invited error, precluding review under either doctrine.

We recognize that our appellate courts have struggled in defining the doctrinal parameters of waiver and invited error, leading occasionally to inconsistent application. *Compare, e.g.*, *Gamble v. State*, 831 N.E.2d 178, 184 (Ind. Ct. App. 2005) (foreclosing appellate review because defendant's failure to request a jury admonishment on prosecutor's improper closing arguments "essentially invited the error"), *trans. denied*, *with Etienne v. State*, 716 N.E.2d 457, 461 (Ind. 1999) (reviewing prosecutor's improper closing arguments for fundamental error after concluding that defendant's "failure to request an admonishment or move for a mistrial" resulted in mere "waiver of the issue"). We can attribute this apparent inconsistency to a long line of precedent defining invited error in somewhat contradictory terms—as both a form of estoppel **and** as a form of waiver.[4] As this Court stated in *Jolly v. Modisett*, a "party will not be permitted to take advantage of errors which he himself **committed or invited or induced** the trial court to commit, or which were the **natural consequences of his own neglect** or misconduct." 257 Ind. 426, 429, 275

---

[3] Initially, the State argued that Batchelor's counsel responded with "No objection." State's Pet. to Trans. at 6. But the State later conceded that it "misattributed the 'no objection' statement to Batchelor's counsel," while still arguing that Batchelor never raised an objection to the jury instructions as a whole. State's Reply Br. on Trans. at 4.

[4] Waiver is a form of procedural default or a forfeiture of rights. *Bunch v. State*, 778 N.E.2d 1285, 1287 (Ind. 2002). Estoppel, on the other hand, stands for the general principle that "one who by deed or conduct has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to such other." *Town of New Chicago v. City of Lake Station ex rel. Lake Station Sanitary Dist.*, 939 N.E.2d 638, 653 (Ind. Ct. App. 2010), *trans. denied*.

N.E.2d 780, 782 (1971) (emphases added). *See also Brewington*, 7 N.E.3d at 975 (virtually the same).

This language first appeared over seventy years ago in *Armstrong v. Presslor*, 225 Ind. 291, 295, 73 N.E.2d 751, 753 (1947) ("An appellant will not be permitted to take advantage of errors which he himself committed, or invited or induced the trial court to commit, or which were the natural consequences of his own neglect or misconduct.") (internal quotations and alterations omitted). Notably, in articulating this now-familiar rule, the *Presslor* Court immediately followed with the general principle that, "[i]f no substantial right of the pleader has been affected, error . . . does not constitute grounds for reversal." *Id.* In other words, the language we associate today with invited error materialized as a form of waiver, leaving open (rather than foreclosing) the possibility of appellate review if the error affected the appellant's "substantial" rights.[5]

Over time, our invited-error doctrine expanded to foreclose even constitutional claims.[6] *See, e.g.*, *Brewington*, 7 N.E.3d at 977 (noting that "even constitutional errors may be invited"); *Durden*, 99 N.E.3d at 655 (finding "no reason to exempt structural errors from the invited-error doctrine" despite prejudicial impact of juror removal) (internal quotation marks omitted).

But throughout the doctrine's history, we have consistently required something more than mere "neglect" before applying the automatic rule

---

[5] We can trace the invited-error doctrine back to the mid-nineteenth century, but even then, the Court considered the degree of potential harm before declining review. *See Billingsley v. Groves*, 5 Ind. 553, 555 (1854) (concluding that the trial court's failure to transfer funds to defendant before entering judgment was "the fault of the defendant," whether by "design or carelessness," and with "**the sum being trivial**, this Court will not reverse the judgment, to protract litigation") (emphasis added).

[6] Our courts have applied some limits to the invited-error doctrine. *See, e.g.*, *Miles v. State*, 889 N.E.2d 295 (Ind. 2008) (holding that a defendant is not precluded under the invited-error doctrine from seeking appellate review of his sentence for murder despite his acquiescence to the sentence imposed); *Vendeventer v. State*, 459 N.E.2d 1221 (Ind. Ct. App. 1984) (reversing conviction for a non-existent offense despite defendant's inclusion of that offense in tendered jury instructions).

of preclusion: evidence of counsel's strategic maneuvering at trial. Indeed, this Court has long held that the "policy behind" the doctrine is to prohibit a party, privy to an "erroneous action of the court," from alleging "prejudicial error" following an adverse decision. *Barton v. State*, 240 Ind. 257, 259, 163 N.E.2d 600, 601 (1960); *Durden*, 99 N.E.3d at 649 (affirming defendant's conviction on grounds that he "invited the error as part of a deliberate trial strategy").

In reaffirming this precedent, we emphasize today that, to establish invited error, there must be some evidence that the error resulted from the appellant's affirmative actions as part of a deliberate, "well-informed" trial strategy. *See Brewington*, 7 N.E.3d at 954. A "passive lack of objection," standing alone, is simply not enough. *Id.* at 974. And when there is no evidence of counsel's strategic maneuvering, we are reluctant to find invited error based on the appellant's neglect or mere acquiescence to an error introduced by the court or opposing counsel. *See Young v. State*, 249 Ind. 286, 289, 231 N.E.2d 797, 799 (1967) (declaring that an appellate court "cannot ignore a fundamental error apparent on the face of the record," as "one is not to be deprived of his liberty because of carelessness on the part of the trial judge and of defense counsel in failing to call to the attention of this Court a gross error which offends our concepts of criminal justice") (citing *Wilson v. State*, 222 Ind. 63, 66, 51 N.E.2d 848, 850 (1943)). This approach, we believe, embodies the first principles this Court pronounced in *Presslor*.

To be sure, cases often arise when either the source of the error or counsel's motives at trial are less than clear. And appellate courts should exercise their judgment in deciding the issue. But when a careful reading of the record fails to disclose enough information, courts should resolve any doubts **against** a finding of invited error rather than engage in speculation. Although this may seem contrary to principles of finality and judicial economy, we believe the opposite is often true. Defendants still carry a heavy burden in meeting the high standard of fundamental error, so there is little to no threat of multiple reversals. And when "the procedural posture of the claim is caused by counsel's failure to object at trial," we can often preempt the defendant's ineffective-assistance-of-counsel challenge on post-conviction review by considering a claim of

fundamental error on direct appeal. *Brewington*, 7 N.E.3d at 974 (because "fundamental error requires a showing of at least as much prejudice to the defendant as a claim of ineffective assistance of counsel," a finding against the former claim establishes a finding against the latter claim) (citing *Culver v. State*, 727 N.E.2d 1062, 1070 & n. 7 (Ind. 2000)); *see also United States v. Hamilton*, 499 F.3d 734, 736 (7th Cir. 2007) (applying similar reasoning). Finally, as this case illustrates, by resolving a claim on the merits, rather than disposing of it on grounds of procedural default, appellate courts can address important issues that would otherwise perpetuate litigation. *See Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015) ("[W]e prefer to resolve cases on the merits instead of on procedural grounds like waiver.") (internal quotation marks omitted).

For these reasons, we agree that, "[u]nder the State's broad interpretation of the invited error doctrine, a defendant will almost always invite error rather than waive it." Resp. to Pet. to Trans. at 10. Indeed, the State, not Batchelor, tendered and relied on the challenged instruction at trial.[7] And we find nothing in the record—and the State cites no evidence—showing that Batchelor made an "active" or "affirmative" request for this instruction, let alone that he intended to exploit it as a deliberate trial strategy. *Cf. Durden*, 99 N.E.3d at 656 (concluding that defense counsel "did far more than simply fail to object" to the procedural error at trial when he "expressly declined 'any caveats' or special instructions for the jury and repeatedly assured the court of his approval of the procedure employed, despite its defects").

We now proceed to the merits of this case.

---

[7] It's unclear from the record whether the State even mentioned the instruction's provenance. The transcript is devoid of reference to *Cowans* or *Woodward*. And while several of the State's proposed instructions cite either the applicable statute or supporting precedent, there is no citation to a source for the challenged instruction. The final instructions given to the jury likewise contain no authority, apart from a single reference to a state constitutional provision.

## II. The challenged instruction resulted in no fundamental error.

Having concluded that Batchelor did not invite the alleged instructional error, we now review his claim for fundamental error, as he failed to object to the tendered instruction at trial. An error is fundamental if it "made a fair trial impossible" or if it clearly and blatantly violated basic principles of due process resulting in "undeniable and substantial potential for harm." *Durden*, 99 N.E.3d at 652 (internal quotation marks omitted). In reviewing a particular instruction for fundamental error, we need not reverse unless the instructions as a whole—the jury charge— misled the jury on the applicable law. *Clay City Consol. Sch. Corp. v. Timberman*, 918 N.E.2d 292, 300 (Ind. 2009).

### A. Instruction 22 misstated the *mens rea* and potentially misled the jury as an incorrect statement of law.

To convict under the felony-resisting statute, as noted above, the State must prove beyond a reasonable doubt that the defendant "knowingly or intentionally" fled from a law-enforcement officer after that officer has identified himself and ordered the defendant to stop. I.C. § 35-44.1-3-1. Instruction 22 falls short of this requirement in two ways.

First, by suggesting that the State need only prove the intent to flee based on what a "reasonable driver" would have done, the challenged instruction impermissibly uses a civil negligence standard to establish criminal culpability. To give "concrete substance for the presumption of innocence," due process requires the State to persuade the factfinder "beyond a reasonable doubt of every fact necessary to constitute the crime charged." *In re Winship*, 397 U.S. 358, 363, 364 (1970). This standard "is a prime instrument for reducing the risk of convictions resting on factual error." *Id*. at 363. A "reasonable person" standard, on the other hand, although a central facet of civil liability in tort law, conflicts with "the conventional requirement for criminal conduct—*awareness* of some wrongdoing." *Elonis v. United States*, 135 S. Ct. 2001, 2011 (2015) (internal quotation marks omitted).

By predicating liability on what a "reasonable driver" considers safe or unsafe, Instruction 22 effectively "reduces culpability on the all-important element of the crime to negligence." *Id.* (internal quotation marks omitted). Although the prosecutor may argue that a defendant's actions were unreasonable, the "test of [a defendant's] knowledge is not whether a reasonable person would have known" of the offense, "but whether, from the circumstances surrounding" the act, the defendant **knew** he committed the offense. *See Gibson v. State*, 643 N.E.2d 885, 888 (Ind. 1994). Because it permitted the State to convict Batchelor on a lesser *mens rea*, Instruction 22 misapplied the felony-resisting statute and threatened to relieve the State of its burden to prove the requisite-intent element in violation of due process. *See Metcalfe v. State*, 715 N.E.2d 1236, 1237 (Ind. 1999) ("Any jury instruction suggesting a lesser mens rea [than the statute requires] is inadequate."); *Winegeart v. State*, 665 N.E.2d 893, 903 (Ind. 1996) (a jury instruction that relieves the State of its burden of proving specific intent compromises the defendant's rights under the Due Process Clause of the Fourteenth Amendment).

Second, Instruction 22 threatened to mislead the jury as an incorrect statement of law. By emphasizing a factual scenario beyond the statutory definition of fleeing—whether "reasonable" safety concerns justified Batchelor's delay in stopping—Instruction 22 minimized other potentially relevant evidence for the jury to consider (e.g., driving speed or complete stops at intersections).

The Indiana Constitution protects the jury's discretion in weighing all the evidence presented at trial. Ind. Const. art. 1, sec. 19 (protecting the jury's right in all criminal trials "to determine the law and the facts"). Instructions that emphasize certain facts while ignoring others can be misleading and invade the jury's province. *See Ludy v. State*, 784 N.E.2d 459, 461 (Ind. 2003).

Because nothing in the resisting statute defines fleeing as unnecessarily delaying a stop without a reasonable safety concern, Instruction 22 threatened to invade the jury's province to decide the law and the facts. *See* Ind. Const. art. 1, sec. 19; *Keller v. State*, 47 N.E.3d 1205, 1205 (Ind. 2016) ("An instruction that invades [the jury's] province by inappropriately

emphasizing certain facts is erroneous and misleads the jury."). Whether there are sound policy reasons for including these factors in a "fleeing" definition is a question best suited for the legislature. *N.D.F. v. State*, 775 N.E.2d 1085, 1088 (Ind. 2002) ("[W]e will not read into the statute that which is not the expressed intent of the legislature."). Until then, it's for the jury to decide whether there's evidence of intentional fleeing.

## B. The jury charge provided adequate instructions on the correct statutory elements and standard of proof.

Instruction 22, standing alone, threatened to relieve the State of its burden to prove that Batchelor "knowingly or intentionally" fled. But the jury, of course, heard not one but multiple instructions. And the trial court expressly directed the jury "to consider all instructions together," not to "single out any certain sentence or any individual point or instruction and ignore the others." App. Vol. II, p.118; Tr. Vol. II, p.225. So, we now look to those instructions to determine whether the jury received adequate information on the correct statutory elements and standard of proof. *See Ramsey v. State*, 723 N.E.2d 869, 872–73 (Ind. 2000); *Yerden v. State*, 682 N.E.2d 1283, 1286 (Ind. 1997).

We first observe that the trial court, in both its preliminary and final instructions, read to the jury the charging information which contained the correct *mens rea*—that "Batchelor did knowingly or intentionally flee from . . . a law enforcement officer." App. Vol. II, p.119; Tr. Vol. II, p.225; Tr. Vol. III, p.122.

The court, in both its preliminary and final jury charges, also gave a comprehensive instruction on the felony-resisting offense. This instruction, virtually identical to Pattern Criminal Jury Instruction 5.3040, enumerates each element of the crime on which the State carried the

requisite burden of proof.[8] *See* 1 Ind. Pattern Jury Instructions: Criminal **§** 5.3040 (4th ed. 2018). These "elements" instructions "provide a jury with a roadmap to guide decision-making" and are "particularly vital to a jury's ability to understand and apply the law to the facts." *LaPorte Cmty. Sch. Corp. v. Rosales*, 963 N.E.2d 520, 524 (Ind. 2012). Instruction 22, by contrast, is merely a "supplemental, definitional instruction" which attempts— albeit inaccurately—to explain the term "fleeing" as it applies to this case. *See id.* To the extent that language in Instruction 22 contradicts language in the "elements" instruction, the latter (read twice to the jury) outweighs the former (read only once to the jury).

---

[8] Indiana Pattern Criminal Jury Instruction 5.3040 delineates the category of offense—from Class A misdemeanor to Level 2 felony—to parallel the resisting-by-fleeing statute. Here, the Court of Appeals tailored the Pattern Instruction to reflect the Level-6 felony charge:

> The crime of Resisting Law Enforcement is defined by law as follows:
>
> A person who knowingly or intentionally flees from a law enforcement officer after the officer has, by visible or audible means, including the operation of the law enforcement officer's siren or emergency lights, identified himself and ordered the person to stop, commits Resisting Law Enforcement, a Class A Misdemeanor. The offense is a Level 6 Felony if the person uses a vehicle to commit it.
>
> Before you may convict the Defendant, the State must have proved each of the following beyond a reasonable doubt:
>
> 1. The Defendant;
>
> 2. Knowingly or intentionally;
>
> 3. Fled from Deputy James A. Switzer, a law enforcement officer;
>
> 4. After Deputy James A. Switzer had, by visible or audible means, including the operation of the law enforcement officer's siren and/or emergency lights, identified himself and ordered the Defendant to stop; and
>
> 5. The Defendant used a vehicle to commit the offense.
>
> If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of Resisting Law Enforcement, a Level 6 felony, as charged in Count 1.

App. Vol. III, p.55.

Preliminary Instructions 9 and 10 emphasized the State's burden, noting that "the State must prove the defendant guilty of each element of the crime charged, beyond a reasonable doubt" and that it "is not enough for the State to show that the Defendant is probably guilty." Tr. Vol. II, pp. 228–29. The trial court repeated this directive to the jury in its final instructions, preceded by a definition of the terms "knowingly" and "intentionally." Tr. Vol. III, p.126. Notably, the jury received no similar instruction defining the term "negligently." And the lack of elaboration on this concept "made it even less likely that the jury was focused on it." *Benefield v. State*, 904 N.E.2d 239, 247 (Ind. Ct. App. 2009), *trans. denied*.

To the extent that Instruction 22 invaded the province of the jury by minimizing potentially relevant evidence of Batchelor's intent to flee, we point to Preliminary Instruction 2 and Final Instruction 1: "Under the Constitution of Indiana, [the jury has] a right to determine both the law and the facts." Tr. Vol. II, p.224; Tr. Vol. III, p.121. Following this directive, the court informed the jurors that they were "the exclusive judges of the evidence." Tr. Vol. II, p.229; Tr. Vol. III, p.129. The court further directed the jury to weigh and consider "all the evidence" in deciding Batchelor's guilt, and that the "quantity of evidence . . . need not control [their] determination of the truth." Tr. Vol. II, pp. 229, 230; Tr. Vol. III, pp. 127, 130.

Finally, we note that, while the State highlighted Instruction 22 in its closing arguments, the court expressly told the jury that these "statements" or "arguments are not evidence." Tr. Vol. II, p.231; Tr. Vol. III, p.130. And to the extent that the jury ignored this instruction, we point out that Batchelor himself argued in closing that the spot where he finally stopped was "a good and safe place to pull over." Tr. Vol. III, p.109.

Given this context, we find the jury charge as a whole sufficiently informed the jury of the proper *mens rea* which the State was required to prove beyond a reasonable doubt. *See Ramsey*, 723 N.E.2d at 872–73 & n.4 (finding instructional error on *mens rea* cured by jury charge even when defendant's intent was "squarely at issue"). The jury charge also cured Instruction 22's impermissible emphasis on certain evidentiary facts. *See id.*

## C. The instructional defect was harmless.

Even if Batchelor had objected to Instruction 22 at trial, we conclude that his conviction was "clearly sustained by the evidence and the jury could not properly have found otherwise." *Dill v. State*, 741 N.E.2d 1230, 1233 (Ind. 2001). That is, the instructional error was harmless. *See id.*; App. R. 66(A).

Here, the State presented uncontroverted evidence showing that Batchelor knowingly fled. After ignoring the officer's emergency lights and siren, Batchelor continued driving for a minute and thirty-eight seconds through a quiet residential area. Even as other vehicles came to a stop during this low-speed pursuit, Batchelor passed several well-lit spots and side streets where he could have parked his truck. He then demonstrated his intention not to comply with law enforcement by fighting and injuring several officers. Rather than reveal Batchelor had acted with simple negligence, the evidence—presented to the jury from the deputy's dashcam video—overwhelmingly shows that he knowingly fled from law enforcement officers.

This evidence, albeit circumstantial, was sufficient for the jury to have found the knowledge element of the crime proven beyond a reasonable doubt **and** sufficient enough to overcome the presumption of prejudice that applies to our analysis of jury instructions for harmless error. *Cf. Kane*, 976 N.E.2d at 1232–33 (holding evidence insufficient to overcome the presumption of prejudice that applied to erroneous instruction on accomplice liability for receiving stolen property when defendant had previously stolen and pawned property, relied on her partner for transportation, shared in his financial struggles, and spent time with him in the home from which the property was taken).

## III. Because of its potential to mislead the jury, we expressly disapprove of the *Cowans* instruction.

The purpose of a jury instruction "is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case **clearly** and arrive at a just, fair, and correct verdict."

*Campbell*, 19 N.E.3d at 277 (internal quotation marks omitted) (emphasis added). While the jury charge as a whole here met this objective, we expressly disapprove of the specific *Cowans* instruction because of its potential to confuse and mislead the jury.[9]

As dicta, the *Cowans* opinion had no binding effect on the trial court here. *See Koske v. Townsend Eng'g Co.*, 551 N.E.2d 437, 443 (Ind. 1990) (holding that statements unnecessary in resolving the issues presented "are not binding and do not become the law"). And even if it were central to the court's holding in *Cowans*, we have long held "that certain language or expression" used by an appellate court "to reach its final conclusion" is "not [necessarily] proper language for instructions to a jury." *Ludy*, 784 N.E.2d at 462 (internal quotation marks omitted); *see also State v. Fisk*, 170 Ind. 166, 168, 83 N.E. 995, 996 (1908) ("Statements found in cases or text-books, however correct in the connection where found, may not always be given to jurors as propositions of law."); *Garfield v. State*, 74 Ind. 60, 63–64 (1881) (same). This is especially true when, as here, the instruction is rooted in reasoning found in a sufficiency-of-the-evidence case, *see Cowans*, 53 N.E.3d at 544 (citing *Woodward*, 770 N.E.2d at 902), not an appellate opinion approving a jury instruction, *see McDowell v. State*, 885 N.E.2d 1260 (Ind. 2008) (finding no appellate approval of jury instructions in cases involving evidentiary claims); *Dunlop v. State*, 724 N.E.2d 592, 595 (Ind. 2000) (finding no intent "to create a trial standard for application by juries" in cases articulating a rationale for evidentiary issues).

We understand the State's concern that this "places trial courts in an untenable situation." Pet. to Trans. at 9. Indeed, trial court judges speak to not one but two audiences in giving instructions—the jury itself and the appellate courts—with the latter often receiving priority to avoid reversal. Fred H. Cate & Newton N. Minow, *Communicating with Juries*, 68 Ind. L.J. 1101, 1111 (1993); Nancy S. Marder, *Bringing Jury Instructions into the*

---

[9] Even the State, at oral argument, conceded that the challenged "instruction is more complex than it needs to be." Oral Arg. Video Tr. at 26:59–27:01. Indeed, its use in this case led one panel of the Court of Appeals to find fundamental error when the trial court applied another panel's advisory dicta and used the *Cowans* instruction.

*Twenty-First Century*, 81 Notre Dame L. Rev. 449, 460 (2006). *See also Winegeart*, 665 N.E.2d at 898 (acknowledging that most instructions used by courts "have not been crafted" with jurors in mind but rather "to avoid appellate reversal"). But this arrangement is no barrier to change. And despite the imprimatur of appellate approval, it's not beyond our orbit, as the Court of last resort in Indiana, to disapprove of a jury instruction now, especially when we never had a chance to review it to begin with.[10] *See* App. R. 57(H) (specifying this Court's "judicial discretion" in granting transfer). To conclude otherwise would avoid our constitutional supervisory responsibility "to assure that juries in criminal cases are equipped with instructions that will allow them to understand and apply correctly" the legal concepts before them. *Winegeart*, 665 N.E.2d at 902 (citing Ind. Const. art. 7, sec. 4).

Going forward, trial courts should use Indiana Pattern Criminal Jury Instruction 5.3040 for the resisting-by-fleeing offense.[11] And while counsel may argue that a defendant's actions are reasonable or unreasonable, it's ultimately for the jury to decide whether there's evidence of knowing or intentional fleeing under the statute.[12]

# Conclusion

For the reasons specified above, we affirm the trial court's conviction of Batchelor for felony resisting. And because he fails to explain how the

---

[10] The parties in *Cowans* did not seek transfer.

[11] *See, e.g., infra*, n.8.

[12] Because Batchelor fails to articulate his mandatory-presumption argument on transfer (focusing instead on the impermissible civil negligence standard in establishing the *mens rea*), we decline to address that argument. Even if we were to analyze that claim, Instruction 22 is not "cast in the language of command" as prohibited by the Due Process Clause of the Fourteenth Amendment. *Francis v. Franklin*, 471 U.S. 307, 316 (1985). And the language used throughout the court's charge to the jury could not "reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense." *Id.* at 315.

instructional error affected his felony-battery and misdemeanor-resisting convictions, we summarily affirm those convictions.

Rush, C.J., and David, Slaughter, and Goff, JJ., concur.

ATTORNEY FOR APPELLANT

Stacy R. Uliana

Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.

Attorney General of Indiana

Larry D. Allen

Stephen R. Creason

Andrew A. Kobe

Deputy Attorneys General

Indianapolis, Indiana