## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 13 2019, 7:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven J. Halbert
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of the Parent-Child Relationship of T.L. (Minor Child); <br><br> N.R. (Father), <br><br> *Appellant-Respondent,* <br><br> v. <br><br> Indiana Department of Child Services, <br><br> *Appellee-Petitioner.* | May 13, 2019 <br><br> Court of Appeals Case No. 18A-JT-2938 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marilyn A. Moores, Judge <br><br> The Honorable Larry E. Bradley, Magistrate <br><br> Trial Court Cause No. 49D09-1803-JT-290 |

**Najam, Judge.**

# Statement of the Case

N.R. ("Father") appeals the trial court's termination of his parental rights over his nine-year-old daughter, T.L. ("Child").[1] Father raises two issues for our review, which we consolidate and restate as whether the trial court clearly erred when it terminated Father's parental rights. We affirm.

# Facts and Procedural History

On May 3, 2016, the Indiana Department of Child Services ("DCS") filed a petition alleging Child to be a Child in Need of Services ("CHINS"). In support of its petition, DCS alleged that Child's "physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect" of Child's parents "to supply [C]hild with necessary food, clothing, shelter, medical care, education, or supervision." Ex. Vol. at 24.[2] Specifically, DCS alleged that Child's mother, C.L. ("Mother"), had physically abused Child. DCS further alleged that Father, who at the time lived in Atlanta, Georgia, "has not successfully demonstrated an ability and willingness to appropriately parent his child, and he is unable to ensure [C]hild's safety and well being . . . ." *Id.* at 25.

---

[1] The trial court also terminated the parental rights of Child's mother, but she does not participate in this appeal.

[2] Our pagination of the Exhibits Volume is based on the .pdf pagination.

[3] On September 7, the trial court adjudicated Child, born October 17, 2009, to be a CHINS based on Mother's physical abuse. Father did not appear at that hearing. The court then ordered Mother to participate in several services.

[4] At a periodic review hearing on January 25, 2017, Father appeared in the trial court for the first time. The court then scheduled a new fact-finding hearing on Child's status as a CHINS so that Father would be able to contest Child's status. However, in April, Father waived his right to that fact-finding hearing. The trial court accepted Father's waiver, affirmed Child's status as a CHINS, and further found Child to be a CHINS based on Father's "inability, refusal[,] or neglect to provide shelter, care, and/or supervision at the present time" to Child. *Id.* at 73. The court then ordered Father to "complete a parenting assessment and successfully complete all recommendations developed as a result of the parenting assessment"; "complete a substance abuse assessment and follow all treatments and successfully complete all treatment recommendations developed as a result of the substance abuse assessment"; "submit to random drug/alcohol screens"; and "participate in therapy with [Child] as recommended by provider(s)." *Id.* at 70.

[5] On March 2, 2018, DCS filed its petition for the termination of Father's parental rights over Child. In its petition, DCS alleged, in relevant part, that the conditions that resulted in Child's removal or the reasons for Child's placement away from Father will not be remedied. After a fact-finding hearing on DCS's petition, on November 20 the trial court found as follows:

9. [Child] had been removed from [F]ather for at least six (6) months under a dispositional decree prior to the filing of this termination action . . . .

10. Services ordered and referred for [Father] included a parenting assessment with follow-up on any recommendations, a substance abuse assessment, with follow-up on any recommendations, and random drug screens.

11. [Father] completed a parenting assessment which recommended a series of parenting courses that could be taken online.

12. [Father] completed some of the courses.

13. It was recommended that [Father] participate in therapy with [Child].

14. Parenting education and therapy may have addressed issues of [Father] being inappropriate in his conversations during time with [Child], as well as to understand how being inconsistent in visits, phone calls, and promises were detrimental to [Child].

15. [Father] underwent a substance abuse assessment but did not complete recommended treatment. He tested positive for alcohol and THC at the assessment.

16. [Father] at times tested positive for illegal substances and admitted using marijuana. He uses drugs to cope with his anxiety and depression.

17. When in town, [Father] would at times not respond to requests for drug tests or would refuse.

18.    [Father] was sporadic in maintaining phone contact with [Child], and [he] had not spoken with her in the two months prior to trial.

19.    [Father] has not exercised parenting time with [Child] since December 26, 2017.

20.    [Child] has been receiving therapy for a diagnosis of anxiety[] and to help process her involvement with [DCS].

21.    [Child] needs consistency . . . .

22.    [Father] was informed in 2017[] of [Child's] need for consistency.

23.    With stability and consistency, [Child] thrives at school.

24.    [Child] has been placed in the same kinship care for the past three years.  Prior to the CHINS action, [Child] stayed off and on with her current caregivers who have known [Child] all her life.

25.    [Child's] placement is preadoptive.  She receives the support and love she needs from her caregivers.

26.    [Child] wishes to remain in her placement and be able to see [M]other and [F]ather.  Her caregiver . . . does not intend to keep the parents out of [Child's] life.

27.    There is a reasonable probability that the conditions that resulted in [Child's] removal and continued placement outside the home will not be remedied by [F]ather.  [Father] has made little progress in demonstrating an ability to appropriately

> parent[,] although first appearing in the CHINS proceeding about twenty months ago. By his lack of completing court ordered services and his inconsistent visits and phone conversations, he has demonstrated an unwillingness to be a real and full-time parent to [Child].

Appellant's App. Vol. at 66-67. The court then terminated Father's parental rights over Child. This appeal ensued.

# Discussion and Decision

[6] Father appeals the trial court's termination of his parental rights over Child. We begin our review by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Fam. & Child. (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cty. Off. of Fam. & Child. (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[7] Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove:

(B) that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

* * *

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2018). DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[8] Here, in terminating Father's parental rights, the trial court entered findings of fact and conclusions thereon following an evidentiary hearing. When a trial court's judgment is based on such findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cty. Off. of Fam. & Child.*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *Judy S. v. Noble Cty. Off. of Fam. & Child. (In re L.S.)*,

717 N.E.2d 204, 208 (Ind. Ct. App 1999), *trans. denied*. We will not reweigh the evidence or reassess the credibility of the witnesses. *Peterson v. Marion Cty. Off. of Fam. & Child. (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*.

[9] Father first asserts that the trial court erred when it terminated his parental rights because the CHINS proceeding was so fundamentally flawed that the termination proceeding was unreliable. "[P]rocedural irregularities in a CHINS proceeding[] may be of such import that they deprive a parent of procedural due process with respect to the termination of his . . . parental rights." *Phelps v. Porter Cty. Off. of Fam. & Child. (In re A.P.)*, 734 N.E.2d 1107, 1112-13 (Ind. Ct. App. 2000), *trans. denied*. According to Father, DCS failed to take adequate steps to serve him with notice of the initiation of the CHINS proceeding. Father also complains that the trial court had already adjudicated Child to be a CHINS by the time Father did appear, which, according to Father, rendered the opportunity for him to challenge that status meaningless.

[10] We reject Father's arguments. Father received notice of the CHINS proceeding while it was *in fieri* before the trial court. Upon Father appearing in the trial court, the court provided him with the opportunity to contest the court's adjudication of the Child as a CHINS at his own fact-finding hearing. However, instead of exercising that right and opportunity, Father agreed to waive the offered fact-finding hearing and, in effect, stipulated that Child was a CHINS. Accordingly, Father has not met his burden on appeal to show that any procedural irregularities in the CHINS proceeding were of "such import"

that they deprived Father of procedural due process in the termination proceeding. *See id.* Indeed, any error in the outcome of the CHINS proceeding was invited by Father when he affirmatively waived his opportunity to a fact-finding hearing to challenge the Child's status as a CHINS. *See Batchelor v. State*, 119 N.E.3d 550, 558 (Ind. 2019).

[11] Father next argues that DCS failed to present sufficient evidence to show that the conditions that resulted in Child's removal from Father's care will not be remedied. In determining whether the conditions that led to a child's placement outside the home will not be remedied, the trial court is required to (1) ascertain what conditions led to the child's removal or placement and retention outside the home; and (2) determine whether there is a reasonable probability that those conditions will not be remedied. *R.C. v. Ind. Dep't of Child Servs. (In re K.T.K.)*, 989 N.E.2d 1225, 1231 (Ind. 2013). The court should assess a parent's "fitness" at the time of the termination hearing, taking into consideration any evidence of changed conditions. *E.M. v. Ind. Dep't of Child Servs. (In re E.M.)*, 4 N.E.3d 636, 643 (Ind. 2014). The court must weigh any improvements the parent has made since removal against the parent's "habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation." *Id.* When making such decisions, courts should consider evidence of a "parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, lack of adequate housing, and employment." *Evans v. St. Joseph Cty. Off. of Fam. & Child. (In re A.L.H.)*, 774 N.E.2d 896, 990 (Ind. Ct. App. 2002).

[12] Here, the trial court initially found that Child's removal from Father's care was necessary because of Father's "inability, refusal[,] or neglect to provide shelter, care, and/or supervision" to Child, which, again, Father did not contest during the CHINS proceeding. Ex. Vol. at 73. After the fact-finding hearing on the petition to terminate Father's parental rights, the court concluded that the evidence showed that Father had continued to "demonstrate[] an unwillingness to be a real and full-time parent to [Child]." Appellant's App. Vol. II at 67. Specifically, the court found that Father had failed to complete court-ordered parenting courses, that he had failed to complete court-ordered therapy with Child, that he had failed to complete court-ordered substance-abuse treatment, that he had continued to fail drug tests, that he had failed to maintain regular phone communication with Child, and that he had failed to fully exercise his parenting time with Child. Those findings support the trial court's conclusion that the conditions that resulted in Child's removal from Father's care will not be remedied.

[13] Nonetheless, Father asserts on appeal that "the only reason for [Child's removal] . . . was [M]other's abuse of [Child] . . . ." Appellant's Br. at 14-15. But Father's argument disregards the actual course of the CHINS proceeding as it related to his opportunity to challenge the CHINS adjudication and the court's reasoning for not placing Child in Father's care at that time. Accordingly, we reject this argument.

[14] Father also asserts on appeal that the evidence is insufficient to demonstrate that the conditions that resulted in the removal of Child from Father will not be

remedied for each of the following reasons: "the record does not support a contention that [Father] was at fault" for his inconsistent communication with Child and inconsistent exercise of parenting time; "[t]here was no testimony or evidence that [Father] ever used marijuana around [Child] or that the occasional use ever created any threat or danger to [Child]"; and "[t]he referral for substance abuse classes was not made until the end of 2017 and the termination petition was filed only a few months later so there was no meaningful effort to timely provide services to [Father] or give him an opportunity to engage and complete them." Appellant's Br. at 17-19. We conclude that Father's arguments go to the weight of the evidence before the trial court on the petition to terminate his parental rights, which we cannot reconsider on appeal.

[15] In sum, we affirm the trial court's judgment that the reasons that resulted in Child's removal from Father's care will not be remedied. As we affirm on this basis, we need not consider alternative rationales in support of the trial court's judgment. *See* I.C. § 31-35-2-4(b)(2)(B).

[16] Affirmed.

Baker, J., and Robb, J., concur.