## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 16 2020, 6:48 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel Hageman
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jamar Green,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | March 16, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2056<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Alicia A. Gooden, Judge<br><br>Trial Court Cause No.<br>49G21-1705-F4-17565 |

**Crone, Judge.**

## Case Summary

[1] Jamar Green appeals his conviction, following a jury trial, for level 4 felony unlawful possession of a firearm by a serious violent felon ("SVF"). He contends that the trial court committed fundamental error when instructing the jury. Concluding that Green has not met his burden to establish fundamental error, we affirm.

## Facts and Procedural History

[2] On May 10, 2017, Indianapolis Metropolitan Police Department ("IMPD") officers and emergency medical technicians ("the EMTs") were dispatched to the parking lot of an apartment complex due to reports of a possible drug overdose. Upon arrival, the EMTs found a vehicle occupied by Green and two females, E.E. and A.P.; Green and E.E. were unconscious, and A.P. was semiconscious. The EMTs removed Green and E.E. from the vehicle and administered Narcan in an attempt to counteract the effects of the suspected overdoses. Shortly after the EMTs removed Green and E.E. from the car, IMPD Officers Jade Pierson and Larry Lanigan arrived on the scene. Officer Pierson spoke with A.P. while Officer Lanigan attempted to retrieve identification from Green and E.E. When Officer Lanigan approached Green, who was lying on the pavement next to the vehicle, he observed a knife in the waistband of Green's pants. As Officer Lanigan was removing the knife from Green's waistband, he also observed a silver semiautomatic handgun next to the knife in the waistband. Officer Lanigan also removed the handgun from Green's waistband as a precaution before Green was placed in the ambulance

to be transported to the hospital. The handgun was loaded and had a round in its chamber.

[3] The State charged Green with level 4 felony unlawful possession of a firearm by an SVF. The State subsequently added a habitual offender sentence enhancement. Four days after Green was arrested, he called E.E. from the Marion County Jail. Green told E.E. that she needed to get in touch with A.P. and essentially get A.P. to claim that she "put the gun on him" because otherwise he would be "facing a lot, a lot, a lot of time." State's Ex. 5. Green explained that "she got to do that. Just tell her to get that permit real quick." *Id*. E.E. assured Green, "I'm gonna tell her when I see her. I'm trying to get a hold of her b*tch ass." *Id*. Green told E.E. to "try to make sure she come down here, man. Make sure she do that, okay?" *Id*.

[4] In bifurcated proceedings, a jury found Green guilty of unlawful possession of a firearm.[1] Green then admitted to the habitual offender enhancement in exchange for a fixed term of six years executed on the enhancement, with placement left to the trial court's discretion.

[5] A sentencing hearing was held on August 2, 2019. The trial court sentenced Green to an aggregate term of fourteen years, with eight years executed in the

---

[1] The parties stipulated that Green was an SVF pursuant to Indiana Code Section 35-47-4-5. Tr. Vol. 2 at 6, 119, 166.

Department of Correction, two years in community corrections, and four years suspended, two of which to be served on probation. This appeal ensued.

## Discussion and Decision

[6] Green argues that the trial court erroneously instructed the jury regarding the definition of actual possession. We generally review a trial court's jury instruction for an abuse of discretion. *Kane v. State*, 976 N.E.2d 1228, 1231 (Ind. 2012). However, Green concedes that he failed to object to the challenged jury instruction, and therefore he claims that the alleged error was fundamental.

[7] The failure to object to a jury instruction results in waiver on appeal, unless giving the instruction was fundamental error. *Barthalow v. State*, 119 N.E.3d 204, 211 (Ind. Ct. App. 2019). An error is fundamental if it clearly and blatantly violated basic principles of due process resulting in "undeniable and substantial potential for harm." *Batchelor v. State*, 119 N.E.3d 550, 559 (Ind. 2019) (citation omitted). In reviewing a particular jury instruction for fundamental error, we need not reverse unless the instructions as a whole—the jury charge—misled the jury on the applicable law. *Id*. Fundamental error is an "extremely narrow exception to the waiver rule," and a defendant "bears the heavy burden of showing that a fair trial was impossible." *Harris v. State*, 76 N.E.3d 137, 139 (Ind. 2017).

[8] Here, the trial court gave the jury a preliminary instruction regarding actual possession that provided as follows:

> The word "possess" means to own or exert control over.
>
> A person who knowingly has direct physical *contact* of a thing at a given time is then in actual possession of it.

Appellant's App. Vol. 2 at 129 (emphasis added). Indiana Pattern Criminal Jury Instruction 14.306 follows this language, but instead of "contact," the word "control" is used. Green argues that this deviation resulted in an incorrect statement of law that was fundamentally erroneous. We disagree.

[9] As noted above, we look to each jury instruction in context and, pursuant to the fundamental error standard of review, we need not reverse unless the instructions as a whole misled the jury on the applicable law. *Batchelor*, 119 N.E.3d at 559. Here, the jury was twice instructed that the State was required to prove that Green knowingly or intentionally possessed a firearm, Appellant's App. Vol. 2 at 137, and the jury was further properly instructed that to "possess" something "means to own or exert control over." *Id.* at 129; IND. PATTERN CRIMINAL JURY INSTRUCTION 14.306. Although Green argues that the erroneous use of the word "contact" in the challenged instruction's definition of actual possession invited the jury to focus solely on the fact of physical contact rather than on actual physical control, the jury was specifically instructed to "consider all the instructions together. Do not single out any certain sentence or any individual point or instruction and ignore the others." Appellant's App. Vol. 2 at 124.

[10] Significantly, the jury was instructed to consider and construe the instructions in the context of "all the evidence admitted during the trial[.]" *Id.* at 147. The central evidentiary dispute during trial was not whether Green exerted physical control over the handgun; it was whether he had done so knowingly or intentionally. Indeed, Green's counsel conceded during both opening and closing statements that "possession" was "not an issue." Tr. Vol. 2 at 96, 140. Green conceded that he technically had both physical contact and control over the gun found on his person but postulated that A.P., E.E., or some random bystander had placed the gun in his waistband while he was unconscious. Moreover, during deliberations, the jury requested to see any available camera footage of the events as well as to rehear Green's jailhouse phone call with E.E., clearly indicating that the jury was focusing on the credibility of Green's theory that he unknowingly or unintentionally possessed the gun. We agree with the State that the "fact that the gun was touching [Green's] body was, in terms of the particular facts of the case, neither here nor there." Appellee's Br. at 14. Under the circumstances, we conclude that the instructions as a whole— the jury charge—did not mislead the jury on the applicable law.

[11] Because Green has not met his burden to establish that the trial court's instruction of the jury made a fair trial impossible or clearly and blatantly violated basic principles of due process resulting in undeniable and substantial potential for harm, we find no fundamental error. Accordingly, we affirm his conviction.

[12]    Affirmed.

May, J., and Pyle, J., concur.