

FILED

Nov 19 2020, 8:50 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer L. Koethe
Navarre, Florida

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

I N  T H E
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Javan D. Brown,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | November 19, 2020<br><br>Court of Appeals Case No.<br>20A-CR-125<br><br>Appeal from the LaPorte Superior<br>Court<br><br>The Honorable Michael Bergerson,<br>Judge<br><br>Trial Court Cause No.<br>46D01-1901-MR-1 |

**Tavitas, Judge.**

## Case Summary

[1]     Javan Brown appeals his convictions for reckless homicide, a Level 5 felony, and dangerous possession of a firearm, a Class A misdemeanor.  We affirm.

# Issues

Brown raises five issues, which we revise and restate as:

I.      Whether fundamental error occurred because Brown's mother was subject to the trial court's separation of witnesses order.

II.     Whether the trial court properly allowed the jury to examine the firearm during deliberations.

III.    Whether the evidence is sufficient to sustain Brown's conviction for reckless homicide.

IV.    Whether Brown's convictions violate the prohibition against double jeopardy.

V.     Whether the trial court abused its discretion when it sentenced Brown.

VI.    Whether Brown's sentence is inappropriate in light of the nature of the offenses and the character of the offender.

# Facts

Dareon[1] Brown, the brother of sixteen-year-old Brown, dated Aubree Kolasa for approximately three years. Kolasa's cousin, eighteen-year-old Justin Garner, and Dareon were "close friends." Tr. Vol. II p. 230. Dareon was "shot

---

[1] Some portions of the record and Appellant's Brief use the spelling "Dereon."

and killed" in December 2018. *Id.* At the time of Dareon's funeral, Brown was in the juvenile detention center and, therefore, missed his brother's funeral.

[4] After Brown was released from detention, on January 13, 2019, Brown illegally purchased a black Taurus semi-automatic 9 mm caliber handgun "for his protection." Tr. Vol. IV p. 179. On Dareon's birthday, Brown shot the handgun four times in honor of Dareon. Brown was familiar with the handgun and its safety mechanisms, but Brown did not take any safety courses regarding the use of firearms.

[5] Additionally, after Brown was released from detention, Brown, Garner, Kolasa, and Kenya Atterberry often "hung out" and smoked marijuana together. *Id.* at 90. On the evening of January 16, 2019, Atterberry and Brown made arrangements to hang out together. Garner borrowed his mother's car, and Garner and Kolasa picked up Brown. Kolasa observed that Brown had his handgun in the waistband of his pants, but Brown later put the gun in the pocket on the back of the driver's seat. Garner was driving. The three eventually drove to pick up Atterberry at Danielle McLachlan's house on Jackson Street in Michigan City. Kolasa was in the passenger seat, and Brown was in the back seat behind Garner, the driver. Garner stopped the vehicle in front of McLachlan's house, and Brown called Atterberry and told her to come outside.

[6] While waiting on Atterberry, Brown pulled the gun out of the pocket on the back of the seat. Although Brown is right-handed, he pulled the gun out with his left hand and pulled the trigger. The bullet entered the bottom portion of the driver's seat headrest. The bullet then entered the back of Garner's head on

the left side and exited Garner's forehead on the right side, resulting in a "massive subarachnoid hemorrhage and tissue destruction [in the brain] from the path of the bullet" and causing Garner's death. Ex. Vol. II p. 57. The bullet lodged in the sun visor on the driver's side of the vehicle.

[7] Brown told Kolasa "not to tell nobody." Tr. Vol. IV p. 194. Brown also told Kolasa to tell the police that "it was a drive-by" shooting and that the shots came from a black car. *Id.* at 199. When Atterberry went outside, she found Kolasa and Brown on the porch. Kolasa was crying, and Brown had his arm around Kolasa. Brown called 911 to report a drive-by shooting. Shortly before 8:00 p.m., police were dispatched to the location due to a report of "shots fired." Tr. Vol. II p. 248.

[8] After Atterberry observed that Garner was dead, she invited Kolasa and Brown inside the house. Brown kept telling everyone it was a drive-by shooting, but Kolasa knew that the shot was fired inside the car and that it was not the result of a drive-by shooting. According to Atterberry, Brown gave Atterberry some marijuana, which she hid inside the dryer. According to Brown, however, he gave Atterberry marijuana, money, and his gun, and Atterberry hid the items.

[9] When police arrived, the vehicle was still in drive and was running. Both of Garner's feet were on the brake. Brown repeatedly claimed at the scene that Garner was shot in a drive-by shooting. The officers, however, observed no bullet holes on the outside of the vehicle. Later that evening, Brown confessed to his mother that he accidentally shot Garner and that Garner was not killed in a drive-by shooting.

[10]　McLachlan's mother consented to a search of her residence. Two small bags of a green leafy substance believed to be marijuana and a black Taurus semi-automatic 9 mm caliber handgun were found hidden in the washing machine under folded towels. A spent 9mm shell casing was located on the ground near the vehicle.

[11]　The State charged Brown with murder. The State later filed a motion to amend the charging information to add a charge of dangerous possession of a firearm, a Class A misdemeanor, which the trial court granted. At the jury trial, Brown testified and admitted to accidentally shooting Garner.

[12]　The jury found Brown guilty of reckless homicide, a Level 5 felony, and dangerous possession of a firearm, a Class A misdemeanor. At the sentencing hearing, the trial court found no double jeopardy violation regarding the entry of both convictions and entered judgment of conviction on both counts. When sentencing Brown, the trial court found one mitigating factor—the fact that Brown was sixteen years old at the time of the offense. The trial court found the following aggravators: (1) Brown's significant juvenile adjudications, which "reflect a fundamental disdain for authority and an acceptance of violence as a viable option"; (2) Brown's lack of remorse; (3) the imposition of the advisory sentence would depreciate the seriousness of the crime; (4) nine prior attempts at rehabilitation failed; and (5) Brown's character and "apparent affinity for and possible affiliation with" a gang. Appellant's App. Vol. III pp. 15-16. The trial court sentenced Brown to five and one-half years for the reckless homicide conviction and one year for the dangerous possession of a firearm conviction.

The trial court ordered the sentences to be served consecutively, for an aggregate sentence of six and one-half years. Brown now appeals.

# Analysis

## I. Mother's Presence During Trial

Brown argues that the trial court erred and violated his due process rights by failing to allow his mother to remain in the courtroom during the trial.[2] Brown and the State both requested a separation of witnesses order, which the trial court granted. In general, a separation of witnesses order is governed by Indiana Evidence Rule 615. "The basic premise of Rule 615 is that, upon request of any party, witnesses should be insulated from the testimony of other witnesses." *Long v. State*, 743 N.E.2d 253, 256 (Ind. 2001). Evidence Rule 615 provides:

> At a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony. Or the court may do so on its own. But this rule does not authorize excluding:
>
> (a) a party who is a natural person;
>
> (b) an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney; or

---

[2] In support of his argument, Brown relies upon *Harris v. State*, 148 N.E.3d 1107 (Ind. Ct. App. 2020). Our Supreme Court, however, granted transfer in *Harris* and vacated the opinion.

(c) a person whose presence a party shows to be essential to presenting the party's claim or defense.

Because Brown's mother was on the witness list, she was subject to a separation of witnesses order and was not allowed in the courtroom during testimony. Brown's mother was present only during jury selection and, thereafter, she remained outside of courtroom until she was called to testify for the defense. Brown, however, did not raise an objection to the separation of witnesses order. In fact, Brown requested the separation of witnesses order and did not request an exception for Brown's mother.

Our Supreme Court has held that "[a] party's failure to object to, and thus preserve, an alleged trial error results in waiver of that claim on appeal." *Batchelor v. State*, 119 N.E.3d 550, 556 (Ind. 2019). "[W]hen the failure to object accompanies the party's affirmative requests of the court, it becomes a question of invited error." *Id.* "The distinction in these two doctrines is an important one: whereas waiver generally leaves open an appellant's claim to fundamental-error review, invited error typically forecloses appellate review altogether." *Id.*

Here, Brown invited the alleged error by affirmatively requesting the separation of witnesses order that he now contests. Accordingly, appellate review of this issue is foreclosed altogether. *See id.* Moreover, even if Brown did not invite the error, he waived any alleged error by failing to object. *See id.* On appeal, Brown makes no argument that fundamental error occurred. Accordingly, Brown's argument that the trial court erred by excluding his mother from the courtroom fails.

## II. Jury's Examination of Firearm

[17] Next, Brown argues that the trial court erred by allowing the jury to pull the trigger on the firearm during deliberations. According to Brown, allowing the jury to pull the trigger on the firearm during deliberations "was an improper experiment because it may have led to supplemental evidence." Appellant's Br. p. 20.

[18] Ray Wolfenbarger, a firearms examiner, testified regarding the Taurus handgun. Wolfenbarger explained the safety features in place on the handgun and testified that the trigger required four and three-quarters pounds of pressure to pull the trigger. The State requested that the jury be allowed to examine the firearm. The trial court then instructed the jury: "we are going to give you the opportunity to pass the exhibit along, . . . you are not entitled to make any experiments for instance, dropping it, pulling the trigger, otherwise examining this other than to just hold it, look at it and pass it on[.]" Tr. Vol. IV p. 4. The next day, the State asked the trial court to reconsider its decision and allow the jury to pull the trigger of the handgun. The trial court took the motion under advisement. The trial court later granted the State's motion and found:

> [The trial court] GRANTS the request as said examination, including the pulling of the trigger of said weapon is consistent with the evidence presented at trial of a properly admitted exhibit and may assist the trier of fact in giving meaning to the technical testimony of the firearms expert, Sgt. Ray Wolfenbarger related to force needed to squeeze the trigger mechanism. *See Patterson v State*, 958 N.E.2d 11 ([Ind. Ct. App.] 2011), and *Kennedy v. State*, 578 N.E.2d 633 ([Ind.] 1991).

Appellant's App. Vol. II p. 178.

[19] Our Supreme Court has held that: "[A]n experiment by the jury is improper where it amounts to additional evidence supplementary to that introduced during the trial." *Bradford v. State*, 675 N.E.2d 296, 304 (Ind. 1996) (citing *Kennedy v. State*, 578 N.E.2d 633 (Ind. 1991), *cert. denied*, 503 U.S. 921, 112 S. Ct. 1299 (1992)). For example, in *Bradford*, our Supreme Court found no error where, during deliberations, jurors returned to the crime scene and performed experiments regarding how fast a person could pour gasoline out of a can and crawl through the house. Our Supreme Court determined that the jury's actions were in keeping with the evidence presented and were not improper.

[20] Similarly, in *Pattison v. State*, 958 N.E.2d 11, 20 (Ind. Ct. App. 2011), *trans. denied*, this Court found no error where the jurors returned to the courtroom during their deliberations to experiment with a weight machine. "A female juror lay on the weight bench and tried to get out from under the weight bar. Next, the same juror tried to get out from under the weights while another juror sat on her and held her wrists." *Pattison*, 958 N.E.2d at 21. This Court held that the jurors' actions were not improper where the jurors "acted in keeping with the testimony presented at trial" and "were examining a properly admitted exhibit." *Id.*

[21] Here, we first note that there is no evidence in the record that the jurors actually pulled the trigger on the firearm during deliberations. Even if the jurors actually pulled the trigger during deliberations, however, such actions would be in keeping with the evidence presented. Wolfenbarger testified extensively regarding Brown's handgun, including testimony regarding the amount of pressure required to pull the trigger on Brown's handgun. Allowing the jurors

to pull the trigger during deliberations under such circumstances would not amount to an experiment that introduced evidence supplementary to that introduced during the trial. Accordingly, the trial court's order was not erroneous. *See, e.g., Bradford*, 675 N.E.2d at 304.

### III. Sufficiency of the Evidence

Next, Brown challenges the sufficiency of the evidence to sustain his conviction for reckless homicide. Sufficiency of the evidence claims "warrant a deferential standard, in which we neither reweigh the evidence nor judge witness credibility." *Powell v. State*, 151 N.E.3d 256, 262 (Ind. 2020). We consider only the evidence supporting the judgment and any reasonable inferences drawn from that evidence. *Id.* We will affirm a conviction if there is substantial evidence of probative value that would lead a reasonable trier of fact to conclude that the defendant was guilty beyond a reasonable doubt. *Id.*

Indiana Code Section 35-42-1-5 provides: "A person who recklessly kills another human being commits reckless homicide, a Level 5 felony." "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Ind. Code § 35-41-2-2(c).

According to Brown, the evidence is insufficient to sustain his conviction because his actions "were simply accidental." Appellant's Br. p. 21. Brown testified that he knows how a firearm works; that he was aware of the safety on the handgun; that he knew how to load the handgun; and that he knew another round would be chambered after the gun was fired. The evidence showed that

Brown placed the handgun in the pocket of the seat while the handgun was loaded, the safety was disabled, and a round was in the handgun's chamber. Brown then reached into the pocket with his left hand, even though he is right-handed, and pulled the handgun out of the pocket with his finger on the trigger. Brown testified that he "pulled [the handgun] out too fast, and the shot went off . . . ." Tr. Vol. V p. 80.

[25] Under these circumstances, the jury could have inferred that Brown killed Garner while acting "in plain, conscious, and unjustifiable disregard of harm that might result" and that the disregard involved "a substantial deviation from acceptable standards of conduct." Ind. Code § 35-41-2-2(c). The evidence is sufficient to sustain Brown's conviction for reckless homicide. *See, e.g., Rice v. State*, 916 N.E.2d 962, 968 (Ind. Ct. App. 2009) (affirming a conviction for reckless homicide where we could not "say that firing a gun in a car with six occupants is not reckless").

## IV. *Double Jeopardy*

[26] Brown argues that his convictions for reckless homicide and dangerous possession of a firearm violate the prohibition against double jeopardy. We apply a de novo standard of review to double jeopardy claims. *Sullivan v. State*, 77 N.E.3d 187, 192 (Ind. Ct. App. 2017), *trans. denied*; *see also Wadle v. State*, 151 N.E.3d 227, 237 (Ind. 2020) (noting that we review statutory and constitutional questions of law de novo); *Powell*, 151 N.E.3d at 262 (noting that we "apply a de novo standard of review to questions of statutory law").

[27] Specifically, Brown contends that "the actual evidence the jury used to convict Mr. Brown of [reckless homicide and dangerous possession of a firearm] may

be identical, therefore one of these convictions should be vacated." Appellant's Br. p. 25. The trial court, however, found "that these two (2) crimes are separate and independent of one another and that the defendant is not subjected to any double jeopardy violation." Appellant's App. Vol. III p. 16. The trial court found: "Notwithstanding the reckless use of the handgun in the death of Justin Garner, ample evidence exists in the record to support the verdict on amended Count II: including circumstances related to the knowing and intentional possession of same on or about January 18, 2018; i.e. the purchase of the gun, its test firing, display of same to others (all by the defendant) and even, according to the defendant, being in his possession for his 'protection.'" *Id.* at 16 n.1.

[28] In his Appellant's Brief, Brown relies upon *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). Following the filing of Appellant's Brief, however, our Supreme Court handed down *Wadle v. State*, 151 N.E.3d 227 (Ind. 2020), and *Powell v. State*, 151 N.E.3d 256 (Ind. 2020), on the same day and expressly overruled *Richardson*. Accordingly, we will apply the framework set forth in *Wadle* and *Powell* in our review of Brown's double jeopardy claims.[3]

---

[3] In *Diaz v. State*, we also addressed double jeopardy "pre-*Wadle* law . . . only because there are outstanding questions about whether *Wadle* should be applied retroactively." *Diaz v. State,* __ N.E.3d __, No. 20A-CR-203, slip op. at 5 (Ind. Ct. App. Oct. 2, 2020). Under the pre-*Wadle* actual-evidence test, the defendant must demonstrate "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Richardson*, 717 N.E.2d at 53. No such reasonable possibility exists here. The reckless homicide conviction was based upon evidence that Brown killed Garner. As discussed below, the dangerous possession of a firearm charge was based upon evidence that sixteen-year-old Brown purchased a firearm, shot it in honor of his brother, and carried the firearm in his waistband. The actual-evidence test is not violated when "each conviction required proof of at least one unique evidentiary fact." *Diaz,* __ N.E.3d at __, slip op. at 6 (quoting *Bald v. State*, 766 N.E.2d 1170, 1172 (Ind. 2002)); *see also Guyton v. State*, 771 N.E.2d

[29]    In *Wadle*, our Supreme Court noted that "[s]ubstantive double jeopardy claims come in two principal varieties: (1) when a single criminal act or transaction violates a single statute but harms multiple victims, and (2) when a single criminal act or transaction violates multiple statutes with common elements and harms one or more victims." *Wadle*, 151 N.E.3d at 247. *Powell* addressed the first variety[4], while *Wadle* addressed the second. Here, the second variety is implicated. Accordingly, we will focus our attention on the analysis set forth in *Wadle*.

[30]    *Wadle* "adopt[ed] an analytical framework that applies the statutory rules of double jeopardy." *Id.* at 235. The test provides:

> [W]hen multiple convictions for a single act or transaction implicate two or more statutes, we first look to the statutes themselves. If either statute clearly permits multiple punishment, whether expressly or by unmistakable implication, the court's inquiry comes to an end and there is no violation of substantive double jeopardy. But if the statutory language is not clear, then a court must apply our included-offense statutes to determine whether the charged offenses are the same. *See* I.C. § 35-31.5-2-168. If neither offense is included in the other (either inherently or as charged), there is no violation of double jeopardy. But if one offense is included in the other (either inherently or as charged), then the court must examine the facts underlying those offenses, as presented in the charging instrument and as adduced

---

1141, 1142 (Ind. 2002) (finding no double jeopardy violation due to convictions for murder and carrying a handgun without a license).

[4] The Court held in *Powell*:

> If the statute defines a separate offense for certain discrete acts . . . within that course of conduct, the separate charges (and corresponding convictions) may stand. But if the statute fixes no separate penalty for each of these acts, and unless those actus are sufficiently distinct "in terms of time, place, [and] singleness of purpose," then a court may impose only a single conviction.

*Powell*, 151 N.E.3d at 261.

at trial. If, based on these facts, the defendant's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction," then the prosecutor may charge the offenses as alternative sanctions only. But if the defendant's actions prove otherwise, a court may convict on each charged offense.

*Id.* at 253.

## *Wadle-First Step*

[31] The first step in the *Wadle* test is to determine whether "either statute clearly permits multiple punishment, whether expressly or by unmistakable implication." *Wadle*, 151 N.E.3d at 253. "If the language of either statute clearly permits multiple punishment, either expressly or by unmistakable implication, the court's inquiry comes to an end and there is no violation of substantive double jeopardy."[5] *Id.* at 248 (footnote omitted).

[32] Here, we must examine the statutes for reckless homicide and dangerous possession of a firearm. Indiana Code Section 35-42-1-5 merely provides: "A person who recklessly kills another human being commits reckless homicide, a Level 5 felony." Indiana Code Section 35-47-10-5(a) provides: "A child who knowingly, intentionally, or recklessly possesses a firearm for any purpose other than a purpose described in section 1 of this chapter commits dangerous possession of a firearm, a Class A misdemeanor." Neither statute "clearly

---

[5] This would seem to be a highly unusual circumstance. As an example, our Supreme Court noted: "Our tax code, for example, expressly permits the imposition of an excise tax on the delivery, possession, or manufacture of a controlled substance, 'in addition to any criminal penalties' imposed under Title 35." *Wadle*, 151 N.E.3d at 248 (quoting Ind. Code § 6-7-3-20).

permits multiple punishment, whether expressly or by unmistakable implication." *Wadle*, 151 N.E.3d at 253. Accordingly, we must address *Wadle*'s second step to determine whether a double jeopardy violation exists here.

### *Wadle-Second Step*

[33] Because neither statute clearly permits multiple punishments, we must address the second step of the *Wadle* test and "apply our included-offense statutes to determine whether the charged offenses are the same." *Id.* In this step, we determine whether either offense is included in the other—"either inherently or as charged"—under the included-offense statutes. *Id.*

[34] Indiana Code Section 35-38-1-6 provides: "Whenever: (1) a defendant is charged with an offense and an included offense in separate counts; and (2) the defendant is found guilty of both counts; judgment and sentence may not be entered against the defendant for the included offense." Indiana Code Section 35-31.5-2-168 defines "included offense" as an offense that:

> (1) is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged;
>
> (2) consists of an attempt to commit the offense charged or an offense otherwise included therein; or
>
> (3) differs from the offense charged only in the respect that a less serious harm or risk of harm to the same person, property, or public interest, or a lesser kind of culpability, is required to establish its commission.

[35]   Subsection (1) is not implicated here.  Reckless homicide and dangerous possession of a firearm are not established by any of the same material elements.  Subsection (2) does not apply either because Brown was not charged with or convicted of any attempt crime.  Finally, subsection (3) does not apply because reckless homicide and dangerous possession of a firearm differ in more respects than just the degree of harm or culpability required.  Each offense requires some conduct the other does not.  *See, e.g., Diaz v. State*, ___ N.E.3d __, No. 20A-CR-203, slip op. at 10 (Ind. Ct. App. Oct. 2, 2020).

[36]   Because neither reckless homicide nor dangerous possession of a firearm is included in the other, pursuant to *Wadle*, Brown's convictions do not constitute double jeopardy.  *Wadle*, 151 N.E.3d at 153 ("If neither offense is included in the other (either inherently or as charged), there is no violation of double jeopardy.").  According to *Wadle*, there is no need to further examine the specific facts of the case under the third step of the test—whether the defendant's actions were "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction."  *Id.*

### *Wadle-Third Step*

[37]   Even if we analyze the third step of the *Wadle* test, however, we also do not find a double jeopardy violation.  Under the third step, we "must examine the facts underlying those offenses, as presented in the charging instrument and as adduced at trial" to determine whether "the defendant's actions were 'so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction.'"  *Wadle*, 151 N.E.3d at 253.

[38] "If the facts show two separate and distinct crimes, there's no violation of substantive double jeopardy, even if one offense is, by definition, "included" in the other." *Id.* at 249. "But if the facts show only a single continuous crime, and one statutory offense is included in the other, then the prosecutor may charge these offenses only as alternative (rather than as cumulative) sanctions." *Id.* "The State can rebut this presumption only by showing that the statute— either in express terms or by unmistakable implication—clearly permits multiple punishment." *Id.* at 249-50.

[39] The charging information for murder alleged that Brown knowingly or intentionally killed Garner. The jury, however, found Brown guilty of the lesser-included offense of reckless homicide, which required the State to prove that Brown recklessly killed Garner. In support of this charge, the State argued that Brown pulled the trigger on his firearm inside a vehicle and that the bullet entered the back of Garner's head, killing Garner.

[40] As for the dangerous possession of a firearm charge, the charging information alleged that, "on or about January 16, 2019", Brown, "being under the age of eighteen (18) years, to-wit: 16 years of age, did knowingly, intentionally, or recklessly possess a firearm for any purpose other than a purpose described in section 1 of this chapter." Appellant's App. Vol. II p. 72. The evidence adduced at trial and argued by the State during closing arguments demonstrated the following facts to support the charge for dangerous possession of a firearm: Atterbury and Kolasa witnessed Brown with the firearm in January; sixteen-year-old Brown purchased the firearm because his brother had recently been murdered; Brown did not take any safety courses regarding the use of firearms;

after purchasing the firearm, Brown shot the firearm four times in tribute to his brother; on January 16, 2019, Brown was carrying the firearm in his waistband. Tr. Vol. V p. 189.

[41] The State used different, unrelated facts to support each of the charges. The dangerous possession of a firearm charge was supported by facts related to Brown's actions with the firearm before the shooting of Garner. Reckless homicide was supported by Brown pulling the trigger of the firearm in Garner's vehicle, killing Garner. Brown's actions were not "so compressed in terms of time, place, singleness of purpose, and continuity of action as to constitute a single transaction." *See Wadle*, 151 N.E.3d at 253. Accordingly, Brown's convictions did not violate the prohibition against double jeopardy.

## V. *Abuse of Discretion in Sentencing*

[42] Brown argues that the trial court abused its discretion when it sentenced him. "Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Phipps v. State*, 90 N.E.3d 1190, 1197 (Ind. 2018) (quoting *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007)). An abuse occurs only if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Schuler v. State*, 132 N.E.3d 903, 904 (Ind. 2019).

[43] A trial court may abuse its discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported

by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Ackerman v. State*, 51 N.E.3d 171, 193 (Ind. 2016), *cert. denied*, 137 S. Ct. 475 (2016). This Court presumes that a court that conducts a sentencing hearing renders its decision solely on the basis of relevant and probative evidence. *Schuler*, 132 N.E.3d at 905. "When an abuse of discretion occurs, this Court will remand for resentencing only if 'we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.'" *Ackerman*, 51 N.E.3d at 194 (quoting *Anglemyer*, 868 N.E.2d at 491).

[44] The trial court here found one mitigating factor—Brown's age at the time of the offense. Brown was sixteen years old. The trial court found the following aggravators: (1) Brown's juvenile adjudications "are significant and reflect a fundamental disdain for authority and an acceptance of violence as a viable option"; (2) Brown's lack of remorse; (3) the imposition of the advisory sentence would depreciate the seriousness of the crime; (4) nine prior attempts at rehabilitation failed; and (5) Brown's character and "apparent affinity for and possible affiliation with" a gang. Appellant's App. Vol. III pp. 15-16.

[45] Brown contends that the trial court failed to consider the following mitigating circumstances: (1) the circumstances were unlikely to reoccur; (2) Brown would likely respond better to a shorter sentence; (3) Brown took the stand and accepted responsibility; and (4) Brown was remorseful. Brown also argues that the trial court abused its discretion by stating that Brown had a high probability to reoffend where the PSI indicated that he had a moderate risk of reoffending.

The trial court "is not obligated to accept the defendant's contentions as to what constitutes a mitigating circumstance or to give the proffered mitigating circumstances the same weight the defendant does." *Weisheit v. State*, 26 N.E.3d 3, 9 (Ind. 2015), *cert. denied*, 136 S. Ct. 901 (2016). "An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Anglemyer*, 868 N.E.2d at 493.

Given Brown's extensive juvenile history and lack of responsiveness to many services, including probation and nonsecure detention, Brown has failed to demonstrate that the circumstances were unlikely to reoccur, that Brown would likely respond better to a shorter sentence, or that Brown had a moderate risk of reoffending. The trial court was not obligated to accept the probation department's assessment that Brown had a moderate risk of reoffending. As for Brown's acceptance of responsibility and remorse, the trial court specifically found Brown's lack of remorse as an aggravating factor. The trial court noted that Brown's "in-court apology . . . was perfunctory and a token one at best." Tr. Vol. VI p. 51. Brown has failed to demonstrate that any of the proposed mitigating circumstances were both significant and clearly supported by the record. The trial court did not abuse its discretion when it sentenced Brown.

## VI. Inappropriate Sentence

Brown argues that his sentence of six and one-half years is inappropriate. The Indiana Constitution authorizes independent appellate review and revision of a trial court's sentencing decision. *See* Ind. Const. art. 7, §§ 4, 6; *Jackson v. State*, 145 N.E.3d 783, 784 (Ind. 2020). Our Supreme Court has implemented this

authority through Indiana Appellate Rule 7(B), which allows this Court to revise a sentence when it is "inappropriate in light of the nature of the offense and the character of the offender." Our review of a sentence under Appellate Rule 7(B) is "not a matter of second guessing" the trial court's sentence; rather, our review is "very deferential to the trial court." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). We exercise our authority under Appellate Rule 7(B) only in "exceptional cases, and its exercise 'boils down to our collective sense of what is appropriate.'" *Mullins v. State*, 148 N.E.3d 986, 987 (Ind. 2020) (quoting *Faith v. State*, 131 N.E.3d 158, 160 (Ind. 2019)).

[49] "'The principal role of appellate review is to attempt to leaven the outliers.'" *McCain v. State*, 148 N.E.3d 977, 985 (Ind. 2020) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)). The point is "not to achieve a perceived correct sentence." *Id.* "Whether a sentence should be deemed inappropriate 'turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case.'" *Id.* (quoting *Cardwell*, 895 N.E.2d at 1224). Deference to the trial court's sentence "should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

[50] When determining whether a sentence is inappropriate, the advisory sentence is the starting point the legislature has selected as an appropriate sentence for the

crime committed. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). Brown was convicted of a Level 5 felony and a Class A misdemeanor. The sentence for a Level 5 felony is "a fixed term of between one (1) and six (6) years, with the advisory sentence being three (3) years." Ind. Code § 35-50-2-6(b). The trial court sentenced Brown to five and one-half years for the reckless homicide conviction. The sentence for a Class A misdemeanor is "a fixed term of not more than one (1) year." Ind. Code § 35-50-3-2. The trial court sentenced Brown to one year for the dangerous possession of a firearm conviction. The trial court then ordered that the sentences be served consecutively, for an aggregate sentence of six and one-half years.

[51] Our analysis of the "nature of the offense" requires us to look at the nature, extent, and depravity of the offenses. *Sorenson v. State*, 133 N.E.3d 717, 729 (Ind. Ct. App. 2019), *trans. denied*. After the shooting death of his brother, sixteen-year-old Brown illegally purchased a handgun. While hanging out with Garner and Kolasa, Brown decided to bring his handgun with him. Brown placed the loaded handgun in the pocket of the seat in Garner's vehicle with the safety disabled. While the trio was waiting on Atterbury, Brown decided to remove the handgun from the pocket with his left hand, even though he is right-handed. Brown pulled the gun from the pocket with his finger on the trigger and discharged the weapon. The bullet struck the back of Garner's head, killing him. Although Brown called 911, he repeatedly claimed that Garner was shot in a drive-by shooting. Brown also asked witnesses to lie about the shooting.

[52] On review, our analysis of the character of the offender involves a "broad consideration of a defendant's qualities," *Adams v. State*, 120 N.E.3d 1058, 1065

(Ind. Ct. App. 2019), including the defendant's age, criminal history, background, and remorse. *James v. State*, 868 N.E.2d 543, 548-59 (Ind. Ct. App. 2007). Brown argues that he accepted responsibility and was remorseful, but as previously noted, the trial court found Brown's lack of remorse as an aggravating factor.

[53] "The significance of a criminal history in assessing a defendant's character is based on the gravity, nature, and number of prior offenses in relation to the current offense." *Boling v. State,* 982 N.E.2d 1055, 1060 (Ind. Ct. App. 2013). Even a minor criminal history is a poor reflection of a defendant's character. *Moss v. State,* 13 N.E.3d 440, 448 (Ind. Ct. App. 2014), *trans. denied*.

[54] Brown has an extensive juvenile history. In 2014, Brown was arrested for battery with bodily injury, which resulted in a referral to the Family and Youth Intervention Program. In 2016, Brown received a delinquency adjudication for acts that would be robbery, Level 3 felony, and criminal confinement, Level 6 felony, if committed by an adult. Brown received a forty-five-day suspended commitment in secure detention, GPS monitoring for thirty days, and probation; and Brown was also ordered to complete home-based therapy, a truancy termination program, and a psychiatric evaluation. Brown repeatedly violated his probation; he was suspended from school and ultimately expelled; he ran away; and he smoked marijuana. In 2017, Brown was adjudicated as a delinquent for escape, a Level 6 felony; criminal mischief, Class B misdemeanor; and being a runaway. He was again placed on probation, which he violated. Arrests for being a runaway and disorderly conduct in 2017 led to

modifications of a previous disposition. The State also presented evidence that Brown was affiliated with a gang.

[55] Given Brown's extensive juvenile history and the reckless choices made here, we cannot say that the sentence imposed by the trial court is inappropriate in light of the nature of the offenses and the character of the offender.

## Conclusion

[56] Brown's argument that the trial court erred by excluding his mother from the courtroom fails. The trial court did not err by allowing the jury to examine and pull the trigger on the firearm during deliberations. The evidence is sufficient to sustain Brown's conviction for reckless homicide. Brown's convictions for reckless homicide and dangerous possession of a firearm do not violate the prohibition against double jeopardy. Moreover, the trial court did not abuse its discretion when it sentenced Brown, and Brown's sentence is not inappropriate. We affirm.

[57] Affirmed.


Kirsch, J., and Pyle, J., concur.