

**FILED**

May 28 2019, 8:36 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Rory Gallagher<br>Indianapolis, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>J.T. Whitehead<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Cordell O. Spencer,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | May 28, 2019<br><br>Court of Appeals Case No.<br>18A-CR-2878<br><br>Appeal from the<br>Marion Superior Court<br><br>The Honorable<br>Clayton Graham, Judge<br><br>Trial Court Cause No.<br>49G07-1708-CM-30572 |

**Vaidik, Chief Judge.**

## Case Summary

[1]     Cordell O. Spencer appeals his conviction for Class A misdemeanor resisting law enforcement by force.  He argues that the trial court erred in declining to give his tendered jury instruction on "force," which included examples from

cases where our appellate courts concluded that the "force" element was not satisfied. Because the proposed instruction emphasized particular factual scenarios, thereby minimizing other potentially relevant evidence, the trial court did not abuse its discretion in declining to give it.

## Facts and Procedural History

The evidence most favorable to the verdict reveals that on the afternoon of August 19, 2017, Indianapolis Metropolitan Police Department Officer Ryan Lundy was on duty when he received a dispatch of "[s]hots fired" in an alley in the 1500 block of North Grant Avenue. Tr. p. 65. Officer Lundy arrived in a couple of minutes and saw a car parked in some grass right off the alley with a foot sticking out of the open driver's window. As Officer Lundy approached the car to investigate, he saw a woman in the driver's seat talking on her cell phone. As Officer Lundy got closer to the car, Spencer quickly exited the front passenger door, which "startled" Officer Lundy because he didn't know there was a passenger. *Id.* at 71. After Spencer exited the car, Officer Lundy looked through the open driver's window and saw two handguns in the center console. Upon seeing the guns, Officer Lundy drew his gun and ordered Spencer, who had since walked to the back of the car, to "turn around" and "put his hands behind his back" so that he could be handcuffed for officer safety while Officer Lundy investigated. *Id.* at 72. The woman also exited the car and began filming Officer Lundy with her cell phone. Spencer responded to Officer Lundy's commands by saying "Fu** you," "I don't have to do that," and

"why, so you can shoot me in the back." *Id.* at 75. Spencer also told Officer Lundy several times that he had a "gun permit" and to "check [his] fu**ing gun permit." *Id.* Officer Lundy's immediate concern was not whether Spencer had a valid gun license, because "[a] gun [license] is not a permission slip to fire off rounds in the city." *Id.*; *see also id.* at 76 (Officer Lundy explaining that if Spencer would have cooperated, he would have confirmed that Spencer had a valid gun license and then "we wouldn't be here today").

[3]     At this point, another officer, Sergeant Franklin Wooten, arrived on the scene. Officer Lundy felt "safer" once Sergeant Wooten arrived, so he holstered his gun and took out his taser. *Id.* at 80. Officer Lundy told Sergeant Wooten that there were two guns in the car and that Spencer was disobeying his commands to turn around and put his hands behind his back. Sergeant Wooten grabbed Spencer's left wrist and Officer Lundy grabbed his right wrist; however, Spencer "stiffened up" to avoid being handcuffed. *Id.* at 82. Spencer then "pulled away" "with enough force" that Officer Lundy lost his grip. *Id.* at 105. Spencer "spun around" and refused to put his hands behind his back despite the officers' numerous commands to do so. *Id.* at 54. At this point, Sergeant Wooten advised Officer Lundy to tase Spencer. Officer Lundy, who had already planned on doing so, tased Spencer once. Spencer "immediately gave up," at which point the officers were able to place him in handcuffs. *Id.* at 55.

[4]  The State charged Spencer with Class A misdemeanor resisting law enforcement.[1]  *See* Appellant's App. Vol. II p. 16 (charging information alleging that Spencer knowingly forcibly resisted, obstructed, or interfered with Officer Lundy and Sergeant Wooten while they were lawfully engaged in the execution of their duties).  At the jury trial, defense counsel tendered a jury instruction based on certain language from an opinion that this Court had issued the day before, *Brooks v. State*, 113 N.E.3d 782 (Ind. Ct. App. 2018):

Defendant's Proposed Jury Instruction on "Force"

In order to find the Defendant guilty of resisting law enforcement, you must find that the State of Indiana has proven beyond a reasonable doubt that the Defendant **forcibly** resisted, obstructed, or interfered with a law enforcement officer who was lawfully engaged in his duties as a law enforcement officer.

Any action to resist, obstruct, or interfere must be done with force.

Force is defined as using strong, powerful, violent means to evade a law enforcement official's rightful exercise of his duties.

Force requires some form of violent action toward another.

---

[1] The State also charged Spencer with Class B misdemeanor possession of marijuana, but the jury acquitted him on this charge.

It is error as a matter of law to conclude that force includes all actions that are not passive.

The following examples are insufficient to constitute force:

Turning and pulling away from a law enforcement officer;

Leaning away from an officer's grasp;

Refusing to present arms for handcuffing;

Twisting and turning a little bit against an officer's actions; or

Walking away from a law enforcement encounter.

However, the force involved need not raise to the level of mayhem.

Source: *Brooks v. State of Indiana*, 18A-CR-759 (Ind. Ct. App. October 31, 2018) (internal citations omitted).

Appellant's App. Vol. II p. 131. The State objected on grounds that the jury instruction (1) was not the pattern instruction and (2) cited "examples." Tr. p. 12. The trial court declined to give the instruction because it contained examples. *Id.* at 14, 16.[2] The trial court, however, gave the pattern jury

---

[2] It may be that the trial court would have given an instruction that defined "force" but did not include specific examples like those Spencer wanted to have included. The trial court said that it was "not giving examples" but "if force is defined, we will define it." Tr. p. 14. However, Spencer did not ask

instruction on resisting law enforcement by force. Appellant's App. Vol. II p. 141; 1 Ind. Pattern Jury Instructions—Criminal 5.3000 (4th ed. 2019). The jury found Spencer guilty, and the trial court sentenced him to 365 days with 18 days executed (time served) and the remainder suspended.

[5] Spencer now appeals.

# Discussion and Decision

[6] Spencer makes one argument on appeal: the trial court erred in refusing to give his tendered jury instruction on "force." "The trial court has broad discretion as to how to instruct the jury, and we generally review that discretion only for abuse." *McCowan v.* State, 27 N.E.3d 760, 763 (Ind. 2015) (quotation omitted). To determine whether a jury instruction was properly refused, we consider: (1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the substance of the instruction was covered by other instructions that were given. *Id.* at 763-64. In doing so, we consider the instructions as a whole and in reference to each other and do not reverse the trial court for an abuse of discretion unless the instructions as a whole mislead the jury as to the law in the case. *Id.*

---

for such an instruction. His focus was on the examples. Indeed, during closing arguments, defense counsel referred to the same examples that were included in the proposed instruction. *See id.* at 156-58.

[7]    Spencer argues that his proposed jury instruction correctly states the law because it "mirrors language" from this Court's opinion in *Brooks* (and other cases). In *Brooks*, we addressed whether the evidence was sufficient to support the defendant's conviction for resisting law enforcement by force. In concluding that the evidence was insufficient, we cited appellate cases where this Court and our Supreme Court found that the "force" element was not satisfied. The State argues that Spencer's proposed instruction is "confusing" because of these examples. Appellee's Br. p. 12. We agree with the State.

[8]    While this appeal was pending, the Indiana Supreme Court addressed a similar issue in *Batchelor v. State*, 119 N.E.3d 550 (Ind. 2019). In that case, the defendant was charged with resisting law enforcement by fleeing, and the trial court gave two jury instructions: the pattern instruction on resisting law enforcement by fleeing and a "supplemental" instruction tendered by the State, which attempted to explain the term "fleeing" and was taken from an opinion from this Court. *Id.* at 561. Our Supreme Court found that the supplemental instruction was misleading because it emphasized a factual scenario, thereby minimizing other potentially relevant evidence. *Id.* at 560. As the Court explained:

> [W]e have long held that certain language or expression used by an appellate court to reach its final conclusion is not [necessarily] proper language for instructions to a jury. This is especially true when, as here, the instruction is rooted in reasoning found in a sufficiency-of-the-evidence case, not an appellate opinion approving a jury instruction.

*Id.* at 563 (quotations and citations omitted). Accordingly, the Court disapproved of the supplemental instruction and held that "[g]oing forward, trial courts should use" the pattern jury instruction on resisting law enforcement by fleeing. *Id.* at 563. The Court noted that while counsel may argue during closing argument whether the defendant "fled," "it's ultimately for the jury to decide whether there's evidence of . . . fleeing under the statute." *Id.*

[9] Spencer's proposed jury instruction sets forth five examples from appellate decisions where this Court and our Supreme Court found that the "force" element was not satisfied. Like the instruction in *Batchelor*, it is misleading because it emphasizes particular factual scenarios, thereby minimizing other potentially relevant evidence. Whether a defendant forcibly resists is a factually sensitive determination. Accordingly, the trial court did not abuse its discretion in declining to give Spencer's proposed jury instruction on force.

[10] Affirmed.

Kirsch, J., and Altice, J., concur.