## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 23 2020, 9:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Suzy St. John
Marion County Public Defender's Office
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Benjamin J. Shoptaw
Deputy Public Defender
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Louis K. Rose,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 23, 2020

Court of Appeals Case No.
20A-CR-323

Appeal from the Marion Superior Court

The Honorable Amy Jones, Judge
The Honorable David Hooper, Magistrate

Trial Court Cause No.
49G08-1903-CM-8408

**Pyle, Judge.**

# Statement of the Case

[1] Louis K. Rose ("Rose") appeals, following a jury trial, his conviction of Class A misdemeanor resisting law enforcement[1] and the imposition of public defender and probation fees. Specifically, Rose argues that: (1) the prosecutor engaged in prosecutorial misconduct that amounted to fundamental error; (2) the trial court abused its discretion when it imposed public defender and probation fees; and (3) the trial court abused its discretion by failing to provide him with written notice of the terms of his probation.

[2] We conclude that Rose has failed to meet his burden of showing prosecutorial misconduct that amounted to fundamental error. Additionally, we conclude that the trial court did not abuse its discretion when it imposed public defender and probation fees. However, we remand to the trial court with instructions that the court provide Rose with a written copy of the terms of his probation.

[3] We affirm and remand with instructions.

# Issues

1. Whether the prosecutor engaged in prosecutorial misconduct that amounted to fundamental error.

2. Whether the trial court abused its discretion when it imposed public defender and probation fees.

---

[1] IND. CODE § 35-44.1-3-1.

3.  Whether the trial court abused its discretion by failing to provide Rose with written notice of the terms of his probation.

## Facts

[4]     On March 2, 2019, Indianapolis Metropolitan Police Department ("IMPD") officers Michael Herrera ("Officer Herrera"), Paul Bellows ("Officer Bellows"), and Nickolas Smith ("Officer Smith") were dispatched to Rose's home to serve an arrest warrant. Officer Herrera knocked on the front door and announced his presence. However, nobody responded. Officer Smith, who was at the backdoor with Officer Bellows, radioed that the "backdoor was unsecured and that they could hear rustling and some voices from inside the residence." (Tr. Vol. 2 at 64). Officer Herrera joined the other two officers at the back door, made another verbal announcement, and entered Rose's home.

[5]     After entering the home, the officers entered the living room where they observed a long hallway with multiple rooms on either side. After the officers made another verbal announcement, Rose's friend, Jarret Jefferson ("Jefferson"), exited one of the bedrooms with his hands raised. Officer Herrera ordered Jefferson "to stop, show [the officers] his hands, [put his] hands up, turn around and walk back" towards the officers. (Tr. Vol. 2 at 66). Jefferson complied and was handcuffed.

[6]     The next person that the officers encountered was Rose, who came out of the same bedroom. Officer Herrera ordered Rose to stop and to show the officers his hands, but Rose ignored the commands. Rose walked out of the room

"very nonchalantly, hands down at his sides" and stated, "took y'all long enough[.]" (Tr. Vol. 2 at 68). Rose was again ordered to stop and to show the officers his hands, but he continued walking towards the three officers.

[7] When Rose was within reach of the officers, Officer Herrera attempted to grab Rose's right arm, and Officer Smith attempted to grab Rose's left arm. As the officers gripped Rose's arms, Rose stated, "hold up," and "violently . . . rip[ed] away" and broke both of the officers' grips. (Tr. Vol. 2 at 68). The officers then ordered Rose to stop resisting and to put his hands behind his back. Rose did not comply and continued to "thrash" around. (Tr. Vol. 2 at 69). Officer Smith then attempted a leg sweep, which resulted in all four individuals falling to the ground. While on the ground, Officer Herrera again ordered Rose to stop resisting and to place his hands behind his back. Rose refused, laid with his arms under his body, and continued to "thrash[] back and forth." (Tr. Vol. 2 at 71). Thereafter, the officers administered two different pain compliance techniques, which resulted in their ability to handcuff Rose.

[8] On March 5, 2019, the State charged Rose with Class A misdemeanor resisting law enforcement. At the ensuing initial hearing, Rose requested a public defender and listed his employment as "landscape, Wendy's[.]" (App. Vol. 2 at 27). Thereafter, the following exchange occurred:

> The Court: Do you intend to hire an attorney or are you asking for the appointment of a Public Defender?
>
> [Rose]: Appointment of a Public Defender.
>
> The Court: All right. And are you employed, sir?

[Rose]:  No, ma'am.

The Court:  How long has it been since you've had a job?

[Rose]:  Uh, about a month or two; like a month and a half.

The Court:  And what did you do about a month and a half ago?

[Rose]:  Uh, I was a second shift manager of Wendy's and also landscaping when the season comes in.

The Court:  The Court will appoint the Public Defender to represent you.  I am ordering you to pay fifty dollars to the supplemental public defender fund.  You may hear me order some people to pay fifty dollars; that's because they're facing only a misdemeanor.  If they're appointed a PD and I say a hundred dollars, that means there's a Felony charge pending[,] and they qualify for a PD.  And if I say no reimbursement[,] it's because I've found that they are not mentally or physically able to work.

(Supp. Tr. Vol. 2 at 3-4).

[9]     Rose's case proceeded to a one-day jury trial in August 2019, wherein Officer Herrera, Officer Bellows, Officer Smith, and Jefferson testified to the facts above.  The jury found Rose guilty as charged.  At the subsequent sentencing hearing, the trial court sentenced Rose to 357 days, suspended to probation, with "standard conditions of probation."[2]  (Tr. Vol. 2 at 143).  The trial court found Rose indigent to court costs but found that he could pay "all fees associated with probation[.]"  (Tr. Vol. 2 at 143).  The trial court then stated that Rose "ha[d] the right to request indigency as probation moves along[,] we'll wait and see, that's the magic words the Court of Appeals likes."  (Tr. Vol.

---

[2] The 357 days on probation was ordered to run consecutive to Rose's sentence under cause number 49G21-1609-F5-035307.

2 at 143). In total, the trial court ordered Rose to pay $340 in probation fees. Rose now appeals. Additional facts will be provided when necessary.

# Decision

On appeal, Rose argues that: (1) the prosecutor engaged in prosecutorial misconduct that amounted to fundamental error; (2) the trial court abused its discretion when it imposed public defender and probation fees; and (3) the trial court abused its discretion by failing to provide him with written notice of the terms of his probation. We will address each of these arguments in turn.

## 1. Prosecutorial Misconduct

Rose argues that the prosecutor made several statements that constituted misconduct. When reviewing an allegation of prosecutorial misconduct, we make two inquiries. First, we determine by reference to case law and rules of professional conduct whether the prosecutor engaged in misconduct, and if so, we next determine whether the misconduct, under all the circumstances, placed the defendant in a position of grave peril to which he would not have been subjected otherwise. *Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014), *reh'g denied*.

Generally, in order to properly preserve a claim of prosecutorial misconduct for appeal, a defendant must not only raise a contemporaneous objection but must also request an admonishment. *Neville v. State*, 976 N.E.2d 1252, 1258 (Ind. Ct. App. 2012), *trans. denied*. If the admonishment is not given or is insufficient to cure the error, then the defendant must request a mistrial. *Id*. Rose concedes

that he neither objected to every comment he contends amounts to misconduct nor did he request an admonishment after objecting to some of the comments made by the prosecutor. Where a defendant does not raise a contemporaneous objection, request an admonishment, or, where necessary, request a mistrial, the defendant does not properly preserve his claims of prosecutorial misconduct. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006).

[13] To prevail on a claim of prosecutorial misconduct that has been procedurally defaulted, a defendant must establish the grounds for the prosecutorial misconduct, and he must also establish that the prosecutorial misconduct resulted in fundamental error. *Ryan*, 9 N.E.3d at 667-68. For a claim of prosecutorial misconduct to rise to the level of fundamental error, a defendant "faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to make a fair trial impossible." *Id*. at 668 (internal quotation marks omitted). Thus, the defendant "must show that, under the circumstances, the trial judge erred in not *sua sponte* raising the issue because alleged errors (a) constitute clearly blatant violations of basic and elementary principles of due process and (b) present an undeniable and substantial potential for harm." *Id*. (internal quotation marks omitted). The element of harm is not shown by the fact that a defendant was ultimately convicted but rather it "depends upon whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled." *Id*. (internal quotation marks omitted).

[14] Here, Rose asserts that the prosecutor committed several instances of prosecutorial misconduct. Specifically, Rose argues that the prosecutor committed misconduct during voir dire by: (1) indoctrinating and conditioning potential jurors; and (2) misstating the law. Rose further argues that the prosecutor committed misconduct during opening statements and closing argument by: (3) conditioning the jury to convict him on factors other than the evidence; and during closing argument by (4) presenting facts not in evidence; and (5) vouching for the witnesses. Rose did not object to the statements comprising arguments (1), (2), (3), or (5). For argument number (4), to which he did object, he did not seek an admonishment or mistrial. Therefore, Rose must establish not only the grounds for prosecutorial misconduct (i.e., misconduct and grave peril), but he must also establish that the prosecutorial misconduct constituted fundamental error. *See Ryan*, 9 N.E.3d at 667-68.

**Indoctrinating and Conditioning Potential Jurors**

[15] We first address Rose's contention that the prosecutor committed misconduct by indoctrinating and conditioning potential jurors during voir dire. The purpose of voir dire is to discover whether any prospective juror has an opinion, belief, or bias that would affect or control his or her determination of the issues to be tried, thus providing a basis for a challenge. *Malloch v. State*, 980 N.E.2d 887, 906 (Ind. Ct. App. 2012), *trans. denied*. Voir dire examination is not intended to "educate" or "indoctrinate" jurors. *Coy v. State*, 720 N.E.2d 370, 372 (Ind. 1999) (internal quotation marks omitted). Our Supreme Court has condemned the practice of counsel utilizing voir dire as an opportunity to

"'brainwash' or attempt to condition the jurors to receive the evidence with a jaundiced eye." *Robinson v. State*, 266 Ind. 604, 610, 365 N.E.2d 1218, 1222 (1977), *cert. denied*. Proper examination of potential jurors may include questions designed to disclose attitudes about the type of offense charged. *Malloch*, 980 N.E.2d at 906. Additionally, the parties may pose hypothetical questions, provided they do not suggest prejudicial evidence not presented in trial. *Gregory v. State*, 885 N.E.2d 697, 707 (Ind. Ct. App. 2008), *trans. denied*.

[16] Rose argues that the State committed misconduct by "indoctrinating jurors that the facts of this case without question prove forcible resistance." (Rose's Br. 17). For example, Rose points out that the prosecutor asked the potential jurors, "[Police officers] try to handcuff [someone]. He pulls away, is that a resisting law enforcement?" (Tr. Vol. 2 at 19). The prosecutor also asked:

> [I]f [police officers are] telling you to do something and you're not doing it or you're using force and you're not doing it -- so pulling away when they're trying to handcuff you, um, getting into a fight, pushing them, body checking them; obviously any of that, you're using force and you're resisting what they're trying to do, okay?

(Tr. Vol. 2 at 20). Thereafter, the prosecutor presented the following hypothetical:

> [Prosecutor]: [O]h, let's say you're walking out [of] a store and a cop sees you on the street and tells you to stop, tells you to like, come over to him and you just keep walking. Why do, um, is that resisting law enforcement?
>
> [Potential Juror]: I guess it depends on the scenario, I mean--

[Prosecutor]: So let's build on that a little, let's say the cop comes up to you and like puts his hand out and like grabs your arm and then you pull away from him; is that resisting law enforcement?

[Potential Juror]: I think in a literal sense yes, it is, um, legally I guess I don't know the indications--

[Prosecutor]: Yea, well so you're pulling away from him, right?

[Potential Juror]: Right.

[Prosecutor]: That pulling away, did you use any amount of force in that?

[Potential Juror]: Yes.

[Prosecutor]: Okay. And then, um, he's giving you an order to stop so he's lawfully engaged in his-- okay, I'm sorry. I guess I left this out. So[,] he's after a robbery suspect that you look like, okay? So[,] I guess the point of this scenario is-- is you don't have a right to just say no, Officer, I'm not going to stop or whatever because it could be a situation where they're pursuing a suspect that just happens to look like you.

(Tr. Vol. 2 at 21-22). Similarly, the prosecutor stated:

Um, does everyone also understand that this doesn't require any kind of battery at all? Like no one has to actually hit an officer or anything like that, pulling away, shoving, body checking somebody, those are all forcible means of resisting law enforcement. Ok, no one has to kick a cop. When I talk about fighting it can be even you know, just back and forth with them.

(Tr. Vol. 2 at 25).

[17] Here, as Rose points out, the prosecutor asked prospective jurors about hypothetical scenarios and made comments characterizing behavior that would constitute forcible resistance. While we agree that the hypotheticals bore some similarities to the actual case and the evidence, we cannot agree that the inappropriate conduct made it impossible for Rose to receive a fair trial. Rose

does not allege that this misconduct continued throughout trial. Furthermore, the jury received preliminary and final instructions with correct statements of the law. *See Weisheit v. State*, 26 N.E.3d 3, 20 (Ind. 2015) (when a jury is properly instructed, we presume they followed such instruction), *reh'g denied*, *cert*. *denied*. Accordingly, we conclude that the prosecutor's comments were not fundamental error.

**Misstatement of the Law**

[18] Rose contends that the prosecutor misstated the law during voir dire by stating that "pulling away" constitutes forcible resistance. We agree with Rose that "there is no bright line rule that 'pulling away' from an officer's grasp is 'forcible' in violation of the statute." (Rose's Br. 19). Indeed, "[w]hether a defendant forcibly resists is a factually sensitive determination." *Spencer v. State*, 129 N.E.3d 209, 212 (Ind. Ct. App. 2019), *trans. denied*. However, contrary to Rose's contention, the prosecutor's characterizations of pulling away as behavior that would constitute forcibly resisting law enforcement is supported by Indiana law. *See Walker v. State*, 998 N.E.2d 724, 727 (Ind. 2013) ("[A] person 'forcibly' resists, obstructs, or interferes with a police officer when he uses strong, powerful, violent means to impede an officer in the lawful execution of his duties."); *Glenn v. State*, 999 N.E.2d 859, 862 (Ind. Ct. App. 2013) (holding evidence was sufficient that defendant forcibly resisted when defendant aggressively pulled away from officer); and *Lopez v. State*, 926 N.E.2d 1090, 1093-94 (Ind. Ct. App. 2010) (holding evidence sufficient that defendant forcibly resisted where defendant pulled away from an officer and kept his arms

underneath his body to prevent officer from handcuffing him), *trans. denied*.

Therefore, we disagree that the prosecutor's statements here constituted misconduct.

[19] Next, Rose claims that the prosecutor misstated the law by failing to correct potential jurors' responses to his question regarding what they believed fulfilled the elements of forcibly resisting law enforcement. At the beginning of voir dire, the prosecutor recited the elements of resisting law enforcement. Immediately thereafter, the prosecutor asked various jurors their thoughts on what constituted resisting law enforcement. In context, it appears that the prosecutor was trying to gauge the potential jurors' preconceived ideas about what types of behavior would constitute forcible resistance. As explained above, proper examination of potential jurors may include questions designed to disclose attitudes about the type of offense charged. *Malloch*, 980 N.E.2d at 906. Even if the potential jurors' responses could be understood to misstate the law, they did not make a fair trial impossible because the jury was instructed regarding the elements of the charge against Rose. *See Weisheit*, 26 N.E.3d at 20. There was no prosecutorial misconduct.

**Conditioning the Jury**

[20] Similar to his claims regarding voir dire, Rose contends that the prosecutor conditioned the jury during opening statements and closing arguments. According to Rose, the prosecutor conditioned the jurors to "be more receptive to the themes permeating the State's presentation – compliance equals safety

and non-compliance equals guilt[.]" (Rose's Br. 24). We disagree that the prosecutor's statements constituted misconduct. To hold otherwise would require that we engage in hyper-critical review of prosecutorial advocacy, a task we cannot and should not undertake. *See Ryan*, 9 N.E.3d at 667 (explaining that a prosecutor has a duty to present persuasive final argument and thus placing a defendant in grave peril, by itself, is not misconduct).

**Facts Not in Evidence**

Next, Rose asserts that "[w]ithout basis in evidence, the prosecutor argued that the police officers showed restraint in not using more force against Rose." (Rose's Br. 27). During closing argument, the following colloquy occurred:

> [Prosecutor]: As far as, the attempt to sweep him-- about Officer Smith attempting to do a leg sweep on the defendant, he admitted that that failed but it is something that they train on at the academy. They're trained to do the same with the knee strike, some with forearm strikes, they're trained to do this at the academy to get pain compliance. I asked them could they have done something else, could you have used a taser, could you have used a baton? No, those are more painful, we were going with the least amount of pain, so if they're decision is to come in here, get in a fight with this guy, why aren't they whipping out the taser and batons? Why are they just using knee strikes?
>
> [Defense Counsel]: Objection, Your Honor.
>
> The Court: State the legal basis right now.
>
> [Defense Counsel]: You Honor, we discussed this part, this part did not come into evidence.
>
> The Court: Overruled.

(Tr. Vol. 2 at 131). The prosecutor also argued that "[w]hen the [o]fficer tells you to do something, you do it. That's how people don't get shot[,]" and that the officers "probably could have tased [Rose] or done something else, they didn't." (Tr. Vol. 2 at 132, 133).

[22] Here, the prosecutor should not have engaged in argument not supported by the evidence. Prosecutors may not argue facts not in evidence. *Neville*, 976 N.E.2d at 1263. While improper, the prosecutor's line of argument did not rise to the level of fundamental error.

**Vouching**

[23] Finally, Rose contends that the prosecutor improperly vouched during closing argument for the State's three officers' credibility. Here, however, we are not presented with a situation in which the prosecutor directly vouched for a witness' credibility. During Rose's closing argument, he called into question the officers' memories and accused the three officers of telling inconsistent and "completely different stories." (Tr. Vol. 2 at 129). The prosecutor's statements that Rose cites as examples of misconduct all occurred during rebuttal and were in response to the inferences raised by Rose during his closing argument. As such, Rose opened the door to the comments made by the prosecutor. Therefore, we conclude that the prosecutor's statements did not constitute misconduct, let alone fundamental error. *See Ryan*, 9 N.E.3d at 669 (holding that it was not prosecutorial misconduct for a prosecutor to respond to

allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable).

## 2. Public Defender Supplemental Fund and Probation Fees

Next, Rose argues that the trial court abused its discretion when it imposed public defender and probation fees. "Sentencing decisions include decisions to impose fees and costs[,]" and a trial court's sentencing decision is reviewed for an abuse of discretion. *Coleman v. State*, 61 N.E.3d 390, 392 (Ind. Ct. App. 2016). "An abuse of discretion has occurred when the sentencing decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*. "If the fees imposed by the trial court fall within the parameters provided by statute, we will not find an abuse of discretion." *Berry v. State*, 950 N.E.2d 798, 799 (Ind. Ct. App. 2011).

### Public Defender Fee

Rose asserts that the trial court abused its discretion when it imposed a $50 supplemental public defender fee. There are three statutory provisions that allow a trial court to impose fees on a defendant to offset public defender costs, and the trial court can order reimbursement under any or a combination thereof. *Jackson v. State*, 968 N.E.2d 328, 333 (Ind. Ct. App. 2012). Rose relies on INDIANA CODE § 35-33-7-6, which provides that the trial court may impose

a supplemental public defender fund fee before completing the initial hearing.[3] Under this statute, the trial court is required to determine whether the defendant is indigent. I.C. § 35-33-7-6(a). If the trial court finds that the defendant is able to pay part of the cost of representation by counsel, the costs are $100 in felony cases and $50 in misdemeanor cases. I.C. § 35-33-7-6(c).

[26] Here, the trial court did not specify which statute authorized the public defender fee it imposed. However, there is language from the record that provides us with clarity. Before imposing the public defender fee, the trial court asked Rose about his employment. Rose explained that he was currently unemployed and that he had not worked for a month and a half. The trial court then appointed a public defender to represent Rose and ordered that he pay $50 to the supplemental public defender fund. Thereafter, the trial court explained that if it says "no reimbursement[,] it's because [it] found that [the defendant] [is] not mentally or physically able to work." (Supp. Tr. Vol. 2 at 4).

---

[3] There are two other statutes that address the trial court's authority to order a defendant to pay all or part of the costs of counsel provided at public expense. First, INDIANA CODE § 33-37-2-3 provides that the trial court may impose part of the costs of representation upon a convicted person, provided that the trial court first determine that such person is not indigent. Here, the trial court found that Rose was indigent at his initial hearing. This statute does not support the imposition of the public defender supplemental fee because the trial court determined that Rose was indigent.

The next statute, INDIANA CODE § 33-40-3-6, authorizes the trial court to impose reasonable attorney fees if it finds that the defendant has the ability to pay the costs of representation. INDIANA CODE § 33-40-3-6 applies only in those situations where the court makes a finding of an ability to pay under the four enumerated factors in INDIANA CODE § 33-40-3-7. Our review of the record reveals that the trial only considered one of the enumerated factors in INDIANA CODE § 33-40-3-7. Thus, it is unlikely that the public defender fee was ordered pursuant to INDIANA CODE § 33-40-3-6.

According to the trial court's order following that hearing, the court found that Rose was "currently indigent." (App. Vol. 2 at 29).

[27] Given the trial court's inquiry into Rose's employment and statement regarding a defendant's ability to work, we conclude that the trial court found that Rose had the ability to pay the cost of representation. *See Cleveland v. State*, 129 N.E.3d 227, 238 (holding that the trial court inquired into defendant's financial abilities and made an implicit finding as to the defendants ability to pay the cost of his public defender's representation). Accordingly, the trial court did not abuse its discretion in imposing the fee.

**Probation Fees**

[28] At Rose's sentencing hearing, the trial court ordered Rose to pay $340 in probation fees. INDIANA CODE § 33-37-2-3 requires a trial court to hold an indigency hearing if the court imposes costs on a defendant. *Johnson v. State*, 27 N.E.3d 793, 794 (Ind. Ct. App. 2015). However, there is no requirement as to when the indigency hearing must be held. *Id.* at 794-95. Here, the trial court did not conduct an indigency hearing when it ordered probation fees and stated that Rose "ha[d] the right to request indigency as probation moves along[,] we'll wait and see[.]" (Tr. Vol. 2 at 143). A "trial court acts within its authority when it chooses to wait and see if a defendant can pay probation fees before it finds the defendant indigent." *Id.* at 795. At the latest, an indigency hearing for probation fees should be held at the time a defendant completes his sentence.

*Id.* Because the trial court has no duty to conduct the indigency hearing until the completion of Rose's probationary period, there is no error.

### 3. Probation Conditions

[29] Rose argues that the trial court abused its discretion by failing to provide him with written notice of the terms of his probation. INDIANA CODE § 35-38-2-2.3(b) provides that:

> When a person is placed on probation, *the person shall be given a written statement specifying*:
>> (1) *the conditions of probation*; and
>> (2) that if the person violates a condition of probation during the probationary period, a petition to revoke probation may be filed before the earlier of the following:
>>> (A) One (1) year after the termination of probation.
>>> (B) Forty-five (45) days after the state receives notice of the violation.

(Emphasis added). "Thus, the law generally requires that if a person is placed on probation, the trial court must provide the defendant a written statement containing the terms and conditions of probation at the sentencing hearing." *Gil v. State*, 988 N.E.2d 1231, 1234 (Ind. Ct. App. 2013). "However, we have previously held that the trial court's failure to provide written probation terms may be harmless error *if* the defendant has been orally advised of the conditions *and* acknowledges that he understands the conditions." *Id.*

[30] At Rose's sentencing hearing, the trial court stated that his probation would include the "standard conditions[.]" (Tr. Vol. 2 at 143). Thereafter, the trial court issued its sentencing order, which included Rose's probation terms.

However, our review of the record reveals that the trial court did not orally state the standard conditions. Further, the probation order lacks any indication of acknowledgement by Rose that he understood the terms of his probation. Although Rose was ordered to report to probation immediately following the sentencing hearing, it is unclear whether he was provided with a written statement of the conditions of his probation. Because we are unable to determine whether Rose was provided notice of his probation terms, we remand to the trial court with instructions that the trial court provide Rose with a copy of the written terms of his probation. *See Gil*, 988 N.E.2d at 1234 (concluding that the trial court must provide the defendant with a written statement containing the terms and conditions of probation at the sentencing hearing); I.C. § 35-38-2-2.3(b)(1).

[31] Affirmed and remanded.

Kirsch, J., and Tavitas, J., concur.